[No. C000992. Third Dist. Jan. 27, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
KENNETH DUANE ROY, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II and III of the Discussion.

**COUNSEL**

Frank O. Bell, Jr., State Public Defender, under appointment by the Court of Appeal, and Julia Cline Newcomb, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Robert D. Marshall and Cynthia G. Besemer, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BLEASE, J.**—Defendant Kenneth Roy was convicted of the first degree murder of Archie Mannix (Pen. Code, § 187;[1] count II) and his robbery (§ 211; count IV) after a jury trial and was found to have possessed but not to have used a knife during these offenses (§ 12022, subd. (b); counts II and IV). He was also convicted of the second degree murder of James Clark (§ 187; count I) and of personally using a knife during that killing (§ 12022, subd. (b)), but was acquitted of his robbery (§ 211; count III). The Mannix murder formed the basis of two special circumstance findings, (1) that it was committed during the commission of a robbery (§ 190.2, subd. (a)(17)(i); count II) and (2) that it was one of two offenses of murder in the first or second degree (§ 190.2, subd. (a)(3); count II).[2] Penalties were imposed of life imprisonment without possibility of parole for the murder-robbery of Mannix (count II), 15 years to life for the murder of Clark (count I), plus a one-year enhancement for use of a weapon (count I), and five years for the Mannix robbery (count IV). Defendant appeals contending the court made instructional errors.

We shall strike the special circumstance findings and vacate the sentence predicated upon them. In all other respects we shall affirm the judgment. In the published portion of this opinion[3] we find the special

---

[1] Unless otherwise noted, all further references will be to the Penal Code.

[2] Defendant was also charged with kidnapping Clark and Mannix for purposes of robbery (counts I and VI, § 209, subd. (b)) and robbing Clark (count III, § 211). Defendant's motion to strike the two kidnapping charges was granted October 26, 1983, and the jury found him not guilty of the robbery charge.

[3] The Reporter of Decisions is directed to publish the opinion except for parts II and III of the Discussion.

circumstance findings infirm for the reason that the jury reasonably could have read the instructions, as given, argued and applied to the evidence, to authorize the aggravated punishment for defendant on the ground he aided and abetted the robbery of Mannix, the natural and probable consequence of which was his killing by another (McHargue). That reading violates section 190.2, subdivision (b), which precludes imposition of the special circumstance for aiders and abettors of a felony murder who intend the commission of the felony but not the killing. (See *People* v. *Anderson* (1987) 43 Cal.3d 1104 [240 Cal.Rptr. 585, 742 P.2d 1306].) In the unpublished portion of the opinion we hold (a) it was harmless error to give CALJIC No. 3.01 (1980) as it preceded *People* v. *Beeman* (1984) 35 Cal.3d 547 [199 Cal.Rptr. 60, 674 P.2d 1318] and (b) it was harmless error to fail to give CALJIC No. 5.17 sua sponte relating to an honest but unreasonable belief in the necessity of self defense.[4]

## FACTUAL AND PROCEDURAL BACKGROUND

On September 13, 1981, defendant and a friend, Jesse McHargue, were hitchhiking near Gridley. In Gridley, they went to a liquor store where they met the victims, Clark and Mannix. The men struck up a conversation and drank beer together near Mannix's truck.

At approximately 9 p.m. that evening, Gridley Police Officer Stan Massey saw Mannix's truck backing up near the liquor store, almost hitting a utility pole and some signs. He stopped the truck to talk to the driver, McHargue. The four men were occupants. Defendant and McHargue appeared to be sober, but neither had a driver's license. Because Mannix and Clark were visibly intoxicated, Officer Massey advised all four men not to drive. Massey noticed two backpacks in the bed of the truck.

At approximately 11:15 p.m. that same night, as Marie Koehler Smart drove through the intersection of Block Road and Evans-Reimer Road near Gridley, she noticed two silhouettes and also saw a truck in the ditch. Smart turned her car around so it was heading south on Block Road and then stopped with her high beams illuminating the area where the truck was resting. She saw two men standing on the ditch bank to the left side of the truck. When she asked if they needed help, the two men approached the car. One of the men, later identified as McHargue, went up to the car window and told Smart they had already summoned help. As Smart made a U-turn to leave, she noticed a man lying on the ground to the left side of the truck at the location she had first observed McHargue and his companion.

---

[4] Our dissenting colleague does not disagree with these holdings, although he feels it necessary to discuss them anyway, from his own vantage point, as part of "a homogenized discussion" of the issues tendered in the published portion of this opinion.

The man was shirtless and appeared to be hurt; he moved his hands "up towards his stomach, then back down." Smart saw McHargue and the other man walk back over to where the man was lying and stand over him.

Early the next morning, officers found Mannix's truck "nosed" into a six-foot-deep ditch. Although there were 12 inches of water in the ditch, no part of the truck was submerged because both ends rested on the opposite walls of the steeply sloped ditch. The front end rested against the south bank. Fifty-feet-long skid marks were found on "Block Road south." Clark's body was found in an empty field on the south side of the ditch in front of the pickup. His clothing was wet and muddy. One of his pants pockets was turned inside out and his shirt was open. A dime was found about four feet from his foot. Mannix's body was found in the ditch partially under the truck. His body was partly submerged in the water. The only clothing remaining on his body was a pair of pants pulled down to his thighs. Both men had stab wounds.

Blood was found on the blackberry bushes on the embankment directly behind the truck above the spot where Mannix's body was discovered. A wallet and some papers were found scattered 10 to 15 feet down the road, east of the truck. The wallet and papers were dry. Mannix's shirt was later found in the ditch.

After the bodies were discovered, Officers Massey and Dustin commenced a search for defendant and McHargue and found them in a restaurant. Both men were carrying buck knives. McHargue's pants were completely wet, either from the thighs or the waist down. Defendant's pantlegs were wet to the calf. After they had been informed of their *Miranda* rights (*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]), defendant and McHargue authorized a search of their backpacks. In McHargue's backpack, Mannix's water-soaked moccasins and vest were found. Defendant's backpack and its contents were also wet.

Defendant at first denied being in the truck with Mannix and Clark, claiming he and McHargue left the two men at the liquor store. During questioning, he admitted being in the truck when McHargue lost control while making a turn. Defendant said that after he and Clark left the truck, Clark began hitting him; defendant then stabbed Clark once in the chest. Defendant said he then told Clark he "was sorry he had to do that." He retrieved his backpack and crossed the ditch to the place where McHargue was standing. At that point, he said, Mannix was already in the ditch.

After defendant's arrest, Mannix's watch was found among defendant's personal belongings. Defendant also had $170 in his wallet.

The medical examiner testified that Clark died from a single stab wound to the chest and that Mannix had multiple stab wounds and scratches on his body and had drowned. Mannix was stabbed in the left chest, in the upper left portion of his abdomen, and five times on his lower left flank. The cause of death was either the stab wound to the chest or the drowning. The examiner also testified that five wounds to the lower flank were inflicted after death.

Sidney Hall, a county jail inmate with defendant, testified that defendant told him Clark and Mannix "got mad" after McHargue wrecked the truck when he took a turn too quickly and ended up in the ditch. He admitted stabbing Clark after Clark hit him in the head with a stick. Defendant said that Mannix and McHargue were also fighting and, seeing that McHargue "was getting the worst of it," defendant went over to help him. Defendant did not say in what manner.[5]

Another jail inmate, William Hudspeth, testified that defendant admitted to him that he and McHargue planned to rob and kill both Clark and Mannix, that they "went on with their plans" and killed Clark first because he was the "easy one." Defendant then assisted McHargue who was having a "hard time" with Mannix. Hudspeth testified that defendant admitted coming up from behind, stabbing Mannix in the lower part of the body, pulling him off McHargue, stabbing him again in the abdomen, and then shoving his head in the water to make certain he was dead. Defendant said that they took between $150 and $160 from the two men; as well as Mannix's vest. After the incident, they got in the pickup and left.

Evidence was presented by the prosecution that a small stain of dried blood found on the base of the blade of defendant's knife was ABO type A blood, matching that of Mannix's blood type. Clark's blood type is ABO type O.

The defense introduced evidence that defendant's blood type is also ABO type A. Defendant's witness, a forensic serologist, testified that if the antigens from the saliva or perspiration of an individual with one blood type are mixed with the blood of another, an incorrect reading of the blood type may result.

The jury returned verdicts as previously set forth.

---

[5] Hall said that although defendant at one point told him Mannix had to die because he was a witness and that he was stabbed and drowned, defendant later retracted the statement.

## DISCUSSION

## I

The prosecution tendered alternative theories of criminal responsibility; that defendant was guilty of the first degree murders of both Mannix and Clark either because (a) the killings were premeditated or (b) they occurred during the commission of a robbery.

As to the first theory, the People argued that defendant and McHargue had a plan to take the two victims "out in the boonies, and to kill them, to rob them, take their pickup and proceed north." Consistent with this plan, defendant pounded Clark to the ground, took money out of his pocket, and then thrust the knife in his chest. The district attorney theorized that, because McHargue was having difficulty with Mannix, defendant came to his assistance and inflicted the fatal thrust to Mannix's chest. According to the prosecutor, the evidence established that, based on the similarity between the fatal wounds to both victims, they were inflicted by the same person, i.e., defendant.

The prosecutor argued alternatively that the facts supported a finding of first degree murder under a felony murder theory. According to him, defendant and McHargue took Mannix and Clark out in the isolated area in order to rob them, as supported by the fact that defendant was found with $170 and Mannix's watch and McHargue with Mannix's vest and moccasins. He argued: "[I]f you find this . . . killing took place while the perpetrator, the defendant . . . was committing a robbery, and intended to rob these people, that is to take their property, and permanently depreive [sic] the people of their property from their immediate possession by force or fear, and a killing resulted, that's also murder in the first degree."

It can be inferred that the jury found that defendant did not plan the murder or the robbery of either Clark or Mannix, since it returned a second degree murder verdict in the Clark killing and found defendant not guilty of the robbery charge with respect to Clark. It also can be inferred that the jury concluded that defendant did not kill Mannix by stabbing, since it found that defendant did not use a knife in connection with his murder. Accordingly, it can be inferred that the jury rejected the prosecutor's argument that defendant planned the robberies or killings. That left the felony murder argument as a likely candidate for the finding of culpability. On this point the jury was instructed that defendant was responsible for the first degree felony murder of Mannix if he aided and abetted his robbery and was liable for the special circumstance if the murder occurred during the commission of the robbery.

The Mannix murder also formed the basis of two special circumstances findings; that it was committed during the commission of a robbery (§ 190.2, subd. (a)(17)(i)) and that it was one of two murders in the first or second degree (§ 190.2, subd. (a)(3)). The jury was not given instructions which distinguished between the scienter required for findings of felony murder and special circumstance. If the jury found, pursuant to the instructions, that defendant was guilty of the felony murder of Mannix on the theory he aided and abetted the robbery of which the Mannix killing was an unintentional but natural and reasonable or probable consequence, it is inconceivable that it separately found that defendant intended that McHargue kill Mannix, a finding necessary, as we shall show, to the valid imposition of a special circumstance penalty.

For reasons which we next detail, we will conclude that the jury reasonably could have been led by instructional error to fuse the standards of criminal responsibility and liability for the special circumstance resulting in improper special circumstance findings.

A.

██ ██ *People* v. *Anderson, supra,* 43 Cal.3d at pages 1138-1148, upholding *Carlos* v. *Superior Court* (1983) 35 Cal.3d 131 [197 Cal.Rptr. 79, 672 P.2d 862] on this point,[6] holds that "[t]he court must instruct on intent to kill as an element of the felony-murder special circumstance when there is evidence from which the jury could find (see *People* v. *Flannel* (1985) 25 Cal.3d 668, 684-685 [160 Cal.Rptr. 84, 603 P.2d 1]) that the defendant was an aider and abetter rather than the actual killer." (*Anderson, supra,* 43 Cal.3d at p. 1147.)

The jury was not so instructed. The special circumstance instruction given here, CALJIC No. 8.80 (1981), preceded the 1984 revision (CALJIC No. 8.80), which, following *Carlos, supra,* explicitly now provides that the accomplice must have "intended to aid in the *killing* of a human being . . . ." (Italics added.) Rather, the jury was instructed in terms which invited the fusion of the distinct standards of guilt and special circumstance.

---

[6]The same standard applies where the special circumstance is predicated upon dual murders. The Penal Code provides that a special circumstance may be found where defendant "has in this proceeding been convicted of more than one offense of murder in the first or second degree." (§ 190.2, subd. (a)(3).) At least one of the offenses must be murder in the first degree. *Anderson* holds that in such a case the aider and abettor must intend the killing of the victim in (at least) one of the multiple murders and that must be a first degree murder, as specified in section 190.2, subdivision (b) (and the special circumstance instruction given here). (43 Cal.3d at pp. 1149-1150.) Here, there is only *one* first degree murder. Accordingly, the instructional defect which attends that finding must also infect the multiple-murder special circumstance finding.

That could occur because the guilt and special circumstance issues are tried simultaneously (§ 190.1, subd. (a)) on the same evidence (§ 190.4, subd. (a)).

The jury was given an original and amended version of the instruction on the standards to be applied in determining defendant's liability for the special circumstance arising from the Mannix murder. The jury was told in the instruction read to it that "[i]f you find the defendant in this case guilty of a *willful, deliberate, premeditated murder* of the first degree, you must then determine if murder was committed" [inter alia] [i]n the commission of a robbery." (Italics added.) If that restriction had been allowed to remain, the issue here considered would have been foreclosed. However, the jury instruction was amended after the reading.

In the instructions sent to the jury room, the premeditation restriction was deleted and the jury was told that: "If you find the defendant . . . guilty of murder of the first degree, you must then determine if murder was committed . . . in the commission of a robbery and/or [he] was convicted . . . of more than one offense of murder in the first or second degree.

". . . . . . . . . . . . . . . . . . .

"If . . . Roy, was not the actual killer, it must be proved beyond a reasonable doubt that he intentionally *aided, abetted* . . . the actual killer in the commission of *the murder* in the first degree before you are permitted to find the alleged special circumstance of that first degree murder to be true . . . ." (CALJIC No. 8.80 (1981), italics added.) "[T]he murder in the first degree" refers to the Mannix murder and, in the circumstances of this case, necessarily encompasses the felony murder theory of culpability.

The reason for the modification is that the district attorney, Mr. Mattly, wished the instruction to be amended to include the felony murder theory of culpability. This is revealed in the colloquy which followed the reading of the instruction to the jury in the unamended form. "The Court: This was their [the defendant's] instruction? [¶] Mr. Mattly: Yes. So all you need to do is you can give this [amended] one, send it in [to the jury in printed form] but all you need to do is this: 'If you find the defendant in this case guilty' what you would do is you would strike, I think, 'of a willful, deliberate, premeditated murder.'" The court then said: "That is to be included as it is now modified by you gentlemen in the instructions to be delivered to the jury? [¶] Mr. Kenkel: Yes. [¶] Mr. Mattly: Yes." That was done. The modified form, showing the striking of the "willful" language appears in the record. From these events it is clear that the prosecution was pursuing a felony murder theory and the jury was unmistakably informed by the

change in instructions that premeditation was not required for the imposition of the special circumstance.

That was emphasized by a second (unamended) instruction which provided: "To find that the special circumstance, referred to in these instructions as murder in the commission of robbery, is true, it must be proved: [1.] That the murder was committed while the defendant was engaged in or was an accomplice in the commission of a robbery. [¶] 2. That the murder was committed in order to carry out or advance the commission of the crime of robbery . . . . In other words, the special circumstance referred to . . . is not established if the . . . robbery was merely incidental to the commission of the murder." (CALJIC No. 8.81.17 (1980).) The fusion of guilt and penalty theories was further emphasized by two other instructions which told the jury, in *identical* words with respect to guilt and penalty instructions, first, that "first degree felony murder based on robbery . . . is not established if the robbery was merely incidental to the commission of any homicide" and, second, that "the special circumstance . . . is not established if the . . . robbery was merely incidental to the commission of the murder." These instructions place the relationship of the robbery to the killing in the identical posture for purposes of culpability, under a felony murder theory, and penalty.

To expand on this point, the first instruction (as amended) refers to *"the* murder of the first degree," i.e., *the* Mannix murder, and informs the jury that if it finds defendant guilty of that murder it must determine whether it "was committed . . . in the commission of a robbery and [that] . . .

". . . . . . . . . . . . . . . .

"[i]f defendant . . . was not the actual killer, it must be proved . . . that he intentionally *aided, abetted* . . . the actual killer in the commission of [that] murder . . . ." The second instruction tells the jury that if the murder was "in the commission of robbery" "it must be proved [inter alia] the defendant . . . was an *accomplice* in the commission of a robbery." (Italics added.) The words "aided, abetted" and "accomplice" are not defined in the special circumstance instructions. The definitions of these terms are to be found only in the instructions on the issue of guilt.

There, the jury was instructed that "[i]f a human being is killed by any one of several persons engaged in the perpetration of, or attempt to perpetrate, the crime of robbery, all persons who . . . with knowledge of the unlawful purpose of the perpetrator of the crime *aid* . . . its commission, are guilty of murder of the first degree, whether the killing is intentional, unintentional, or accidental." (CALJIC No. 8.27 (1979), italics added.) It

was also instructed that the "unlawful killing of a human being, whether intentional, unintentional or accidental, which occurs as a result of the commission of or attempt to commit the crime of robbery, and where there was in the mind of the perpetrator the specific intent to commit such crime, is murder of the first degree." (CALJIC No. 8.21.) The jury was further instructed that "[o]ne who aids and abets is not only guilty of the particular crime that to his knowledge his confederates are contemplating committing, but he is also liable for the natural and reasonable or probable consequences of any act that he knowingly aided or encouraged." (CALJIC No. 3.00 (amended by CALJIC No. 4.25.) These instructions made clear that the aider and abettor of a felony murder need not intend the killing.

It bears repetition that the jury was instructed on the relationship of the Mannix murder to the Mannix robbery in identical terms in both the guilt and penalty instructions, that "first degree felony murder based on robbery . . . is not established if the robbery was merely incidental to the commission of any homicide" and that "the special circumstance . . . is not established if the . . . robbery was merely incidental to the commission of the murder."

In sum, the jury was told that it could find defendant guilty of the first degree felony murder of Mannix if he intended his act of assistance to aid the robbery and the killing was the natural and probable product of the robbery, whether he intended that result or not. It was also told that if *that* murder were committed in the commission of a robbery a special circumstance finding is warranted. By any account of the instructions, a concrete link was forged between the guilt and special circumstance instructions. Indeed it is inconceivable that the jury, having found defendant guilty of the first degree murder of Mannix on the theory that it unintentionally resulted from an intended robbery, would not have concluded that *the* murder occurred during the commission of a robbery, justifying the imposition of the special circumstance.

The explicit fusion of guilt and penalty instructions permits, indeed invites, the violation of the standard set down in *People* v. *Anderson, supra.*

### B.

A contrary conclusion is suggested by the recent case of *People* v. *Warren* (1988) 45 Cal.3d 471 [247 Cal.Rptr. 172, 754 P.2d 218]. It held that the trial court did not have to instruct the jury that the accomplice must intend the killing because "all the evidence shows that the defendant either actually killed the victim or was not involved in the crime at all . . . ." (*Id.,* at p. 487.)

Notwithstanding this dispositive holding, the court in dictum went on to say that the instruction on special circumstances correctly stated the law and would not have misled a reasonable jury into believing that an intent to rob sufficed for the special circumstance. That instruction provided that the jury could impose the special circumstance if " 'the defendant was . . . a person who intentionally aided, abetted . . . the actual killer in the commission of murder in the first degree.' " (*Warren,* 45 Cal.3d at p. 487.) The court observed that "in the context of this case the challenged instructions might conceivably be construed in a different manner. In delivering its charge the court defined first degree felony murder: 'The unlawful killing of a human being, whether intentional, unintentional or accidental, which occurs as a result of the commission of . . . the crime of robbery, and where there was in the mind of the perpetrator the specific intent to commit the crime of robbery, is murder of the first degree.' " (*Ibid.*) The court concluded, however, that "the instructions . . . would not be so construed by a reasonable juror [for] one could understand the charge as requiring an intent to rob and nothing more only if [a jury] parsed it in a hypertechnical manner." (*Id.,* at p. 488.) We are not told in what manner the jury would correctly "parse" the instruction. We are told that the court was convinced that the jury would not have linked the standards for guilt and special circumstance.

However, that was said in the context of a case in which "all the evidence shows that the defendant either actually killed the victim or was not involved in the crime at all . . . ." (45 Cal.3d at p. 487.) Accordingly, there was no factual predicate by which to reach the issue of reasonableness nor to determine whether the jury could have made the linkage on the facts of the case. That circumstance led three concurring justices to remark that the observation by the majority opinion is dictum. (*Id.,* at p. 490.) Dictum is not binding as a holding. (See, e.g., *People* v. *Milner* (1988) 45 Cal.3d 227, 237 [246 Cal.Rptr. 713, 753 P.2d 669].)

In any event, *Warren* is distinguishable on its facts and instructions. The sole, generalized instruction on the standards for the special circumstance finding considered in *Warren* did not explicitly link the criteria for that determination to the standards for the felony murder. In this case, the linkage is explicitly made in the instructions. That linkage is supported by the evidence adduced and the manner in which the case was argued and presented to the jury.

### C.

Based on the evidence presented to it, the jury could reasonably have inferred that two simultaneous fights ensued following the wreck of

Mannix's truck by McHargue; defendant fought Clark while McHargue fought Mannix. The jury could have found that the lower part of defendant's pants became wet when he got out of the truck, when he fought with Clark, and/or when he crossed back across the ditch after killing Clark. The jury could have inferred that Mannix was injured, possibly fatally, but still alive when defendant came over to the location of the Mannix/McHargue altercation. The jury may have believed that at that point defendant either personally robbed Mannix of some of his personal possessions or assisted McHargue in his taking of Mannix's property. It is a further permissible inference from the evidence that McHargue then either dragged Mannix to the ditch and drowned him or that Mannix was able to muster up his last bit of strength and continued to fight McHargue in the ditch. The fact that McHargue's pants were wet up to his thighs or waist would support a conclusion that McHargue personally drowned Mannix. The finding by the jury that defendant did not use a knife during the commission of the offense against Mannix reveals that the jury rejected the theory that defendant inflicted the fatal stab wounds on Mannix. Thus, it is reasonable to conclude that the jury inferred that defendant's only participation in the offenses relating to Mannix was his taking of Mannix's personal property while he was still alive or his assistance in McHargue's taking of the property.

### D.

That leads us to consider whether the instructional error was harmless.

As we have observed, *Anderson* holds that "[t]he court must instruct on intent to kill as an element of the felony-murder special circumstance when there is evidence from which the jury could find (see *People v. Flannel* (1985) 25 Cal.3d 668, 684-685 [160 Cal.Rptr. 84, 603 P.2d 1]) that the defendant was an aider and abettor rather than the actual killer." (*Anderson, supra,* 43 Cal.3d at p. 1147.) This applies to both felony murder and multiple murder grounds of special circumstance. (See *Anderson, supra,* at pp. 1147 and 1149-1150.)

Until recently the California Supreme Court has had no occasion to discuss the standard for harmless error applicable to a failure to give the intent instruction required by *Anderson*. That is so because in each case in which the issue was tendered the court determined that the instruction was not required because the issue of aiding and abetting was not before the jury. This determination was variously founded (a), as in *People v. Anderson, supra,* on the ground there was *no evidence* warranting a finding that the defendant was an aider and abettor of a felony murder (See *People v.*

*Hamilton* (1988) 45 Cal.3d 351, 363-364 [247 Cal.Rptr. 31, 753 P.2d 1109]; and *People* v. *Warren, supra,* 45 Cal.3d at p. 487; *People* v. *Coleman* (1988) 46 Cal.3d 749, 779 [251 Cal.Rptr. 83, 759 P.2d 1260]); (b) it was undisputed or conceded or uncontradicted that the defendant was the actual killer (See *People* v. *Babbitt* (1988) 45 Cal.3d 660, 708 [248 Cal.Rptr. 69, 755 P.2d 253]; *People* v. *Keenan* (1988) 46 Cal.3d 478, 503 [250 Cal.Rptr. 550, 758 P.2d 1081]; *People* v. *McDowell* (1988) 46 Cal.3d 551, 566 [250 Cal.Rptr. 530, 758 P.2d 1060]); (c) the issue did not arise because the jury was not instructed on an aider and abettor theory (*People* v. *Melton* (1988) 44 Cal.3d 713, 747, fn. 12 [244 Cal.Rptr. 867, 750 P.2d 741]; see also *People* v. *Bunyard* (1988) 45 Cal.3d 1189, 1241 [249 Cal.Rptr. 71, 756 P.2d 795]); and (d) the jury returned a special verdict that the killing was premeditated. (See *People* v. *Miranda* (1987) 44 Cal.3d 57, 89 [241 Cal.Rptr. 594, 744 P.2d 1127]; *People* v. *Boyde* (1988) 46 Cal.3d 212, 243 [250 Cal.Rptr. 83, 758 P.2d 25].)

However, these cases do imply that *if* there is evidence from which the jury could permissibly have inferred that the defendant was an aider and abettor of the felony murder the *Anderson* instruction is mandatory. That is the apparent holding of *People* v. *Garrison* (1989) 47 Cal.3d 746 [254 Cal.Rptr. 257, 765 P.2d 419]. It held that because "there was evidence from which a jury could have based its verdict on an accomplice theory, the court erred in failing to instruct that the jury must find that defendant intended to aid another in the killing of a human being." (*Id.,* at p. 789, fn. omitted.)

*Garrison* held that such an error is subject to the *Chapman* standard of harmless error, relying upon *People* v. *Odle* (1988) 45 Cal.3d 386, 410-415 [247 Cal.Rptr. 137, 754 P.2d 184]. Under *Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824, 24 A.L.R.3d 1065], "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." That standard cannot be satisfied, i.e., such a belief cannot be declared, where, as in this case, an inference can be drawn from the record that the jury found that the defendant was liable for the special circumstance on the ground that he intentionally aided a robbery but did not intend the killing that occurred during its commission. If the jury could have made such a finding it (obviously) cannot be said that the error (the failure to preclude such a possibility by a correct instruction) was harmless beyond a reasonable doubt.

In *Garrison* the court concluded that the error was harmless on the theory that "the failure to instruct on intent was necessarily resolved adversely to defendant under other, properly given instructions. (See *People* v.

*Sedeno* [1974] 10 Cal.3d 703 [112 Cal.Rptr. 1, 518 P.2d 913].)" (47 Cal.3d at pp. 789-790.) "In such cases the issue should not be deemed to have been removed from the jury's consideration since it has been resolved in another context, and there can be no prejudice to the defendant since the evidence that would support a finding that only [in this case] the lesser offense was committed has been rejected by the jury." (*People* v. *Sedeno* (1974) 10 Cal.3d 703, 721 [112 Cal.Rptr. 1, 518 P.2d 913].) In other words, the error is harmless if it cannot be said, viewed from the vantage point of all of the instructions given and the evidence adduced, that the jury could have drawn an adverse inference from the erroneous instruction.

As we have shown in great detail, that is not the case here. Considering all of the instructions the jury could have drawn the conclusion that defendant was liable for the special circumstance on the theory he aided and abetted the Mannix robbery without intending that Mannix be killed.

Accordingly, the special circumstance findings must be reversed.

## II, III*

. . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment of sentence predicated upon the special circumstance findings is reversed. The judgment is affirmed in all other respects. The case is remanded for resentencing or retrial on the issue of special circumstances at the option of the prosecuting attorney.

Sims, J., concurred.

**EVANS, Acting P. J.**—I respectfully dissent; my dissent is directed to the published portion of the opinion only. However, my view of the entire case requires a homogenized discussion of the separate issues. I do concur, as will be discerned from the following discussion, with the balance of the majority opinion on the issues there addressed.

The majority and I differ on the meaning and effect of five recent Supreme Court decisions dealing with *Beeman*[1]-type error (*People* v. *Anderson* (1987) 43 Cal.3d 1104, 1138-1148 [240 Cal.Rptr. 585, 742 P.2d 1306];

---

* See footnote, *ante,* page 642.

[1] *People* v. *Beeman* (1984) 35 Cal.3d 547 [199 Cal.Rptr. 60, 674 P.2d 1318].

*People* v. *Dyer* (1988) 45 Cal.3d 26, 59-65 [246 Cal.Rptr. 209, 753 P.2d 1]; *People* v. *Odle* (1988) 45 Cal.3d 386, 410-416 [247 Cal.Rptr. 137, 754 P.2d 184]; *People* v. *Warren* (1988) 45 Cal.3d 471, 486-488 [247 Cal.Rptr. 172, 754 P.2d 218]; *People* v. *Keenan* (1988) 46 Cal.3d 478, 503-504 [250 Cal.Rptr. 550, 758 P.2d 1081]). The effect of the majority opinion would effectively circumvent the clear import of *People* v. *Anderson* in overruling the decision of *Carlos* v. *Superior Court* (1983) 35 Cal.3d 131 [197 Cal.Rptr. 79, 672 P.2d 862], and to ignore the clear and unambiguous statement that the use of former CALJIC No. 3.01 which contains the *Beeman*-type error is to be treated as *Chapman* error.[2] (*People* v. *Dyer, supra,* at pp. 59-65.)

In addressing the issues specifically raised by the defendant in this dissent, I will illustrate what I believe to be an attempt by the majority opinion, particularly in its published portion, to obfuscate the clear meaning of the cited Supreme Court decisions, *supra,* and their application to a case such as this, in which the absence of an instruction on specific intent to kill in the felony-murder circumstance by an aider and abettor is asserted as reversible error.

## I

Defendant contends the court committed prejudicial error by failing to sua sponte give CALJIC No. 5.17 which defines an honest but unreasonable belief in the necessity to defend,[3] and that as a consequence, the second degree murder conviction (Clark) must be reversed. I disagree.

" ' "It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. [Citations.] The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case." [Citation.]' " (*People* v. *Wickersham* (1982) 32 Cal.3d 307, 323 [185 Cal.Rptr. 436, 650 P.2d 311].)

The Supreme Court in *People* v. *Flannel* (1979) 25 Cal.3d 668, 682-683 [160 Cal.Rptr. 84, 603 P.2d 1], held that the unreasonable belief rule should

---

[2] *Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824, 24 A.L.R.3d 1065].

[3] CALJIC No. 5.17 (5th ed. 1988) provides: "A person, who kills another person in the honest but unreasonable belief in the necessity to defend against imminent peril to life or great bodily injury, kills unlawfully, but does not harbor malice aforethought and cannot be found guilty of murder. This would be so even though a reasonable person in the same situation seeing and knowing the same facts would not have had the same belief. Such an honest but unreasonable belief is not a defense to the crime of [voluntary] [or] [involuntary] manslaughter."

be considered a general principle for purposes of jury instruction, and in cases not yet tried, the court should give the instruction sua sponte if the other requirements for such an instruction are met. "[T]he duty to give instructions, *sua sponte*, . . . arises only if it appears that the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case." (*People* v. *Sedeno* (1974) 10 Cal.3d 703, 716 [112 Cal.Rptr. 1, 518 P.2d 913].)

Under the facts of this case, the court should have given CALJIC No. 5.17 and erred in failing to do so. However, the error was harmless, because "the factual question posed by the omitted instruction was necessarily resolved adversely to the defendant under other, properly given instructions." (*Sedeno, supra,* 10 Cal.3d at p. 721.) The jury was adequately instructed that an honest but unreasonable belief in self-defense can negate malice by the court's reading of CALJIC Nos. 8.40 (1979 re-rev.)[4] (voluntary manslaughter—defined) and 8.50 (1980 rev.). CALJIC No. 8.50 provides: "The distinction between murder and manslaughter is that murder requires malice while manslaughter does not. [¶] When the act causing the death, though unlawful, is done [in the heat of passion or is excited by a sudden quarrel such as amounts to adequate provocation] [in the honest but unreasonable belief in the necessity to defend against imminent peril to life or great bodily injury] the offense is manslaughter. In such a case, even if an intent to kill exists, the law is that malice, which is an essential element of murder, is absent. [¶] To establish that a killing is murder and not manslaughter, the burden is on the state to prove beyond a reasonable doubt each of the elements of murder and that the act which caused the death was not done in the [heat of passion or upon a sudden quarrel] [in the honest, even though unreasonable, belief in the necessity to defend against imminent peril to life or great bodily injury]." Under the circumstances, the jury obviously found that defendant did not act pursuant to an honest, but unreasonable belief in the necessity to defend, and found him guilty of murder in the second degree.

## II

Defendant argues the court committed reversible error by utilizing former CALJIC Nos. 3.00, 3.01, and 8.27. He cites to *People* v. *Beeman, supra,*

---

[4]CALJIC No. 8.40 provides: "The crime of voluntary manslaughter is the unlawful killing of a human being without malice aforethought when there is an intent to kill. [¶] There is no malice aforethought if the killing occurred upon a sudden quarrel or heat of passion, [or] [in the honest but unreasonable belief in the necessity to defend oneself against imminent peril to life or great bodily injury]. [¶] In order to prove the commission of the crime of voluntary manslaughter, each of the following elements must be proved: [¶] 1. That a human being was killed, [¶] 2. That the killing was unlawful, and [¶] 3. That the killing was done with the intent to kill."

35 Cal.3d 547, and contends he was denied due process because the jury was not informed that to find him guilty as an aider and abettor they must find that he specifically intended to encourage or facilitate the criminal act. He also argues the court erred by failing to instruct the jury that they must find intent to kill in order to find him guilty of felony murder.

He grounds his contentions on *Carlos v. Superior Court, supra,* 35 Cal.3d 131, which has recently been overruled by *People* v. *Anderson, supra,* 43 Cal.3d 1104. *Anderson* holds "intent to kill is not an element of the felony-murder special circumstance [§ 190.2, subd. (a)(17)]; but when the defendant is an aider and abettor rather than the actual killer, intent must be proved." (Pp. 1138-1139.) Accordingly, I conclude that to the extent the jury found defendant to have been the actual killer of Archie Mannix, it was not required, before finding true the felony-murder special circumstance, that defendant intended to kill Mannix.[5] To the extent the jury found defendant to have been an aider and abettor rather than the actual killer, however, I believe the jury, contrary to defendant's assertion, was properly instructed that it had to find defendant intended to kill, as follows: "If defendant Kenneth Duane Roy was not the actual killer, it must be proved beyond a reasonable doubt that he intentionally aided, abetted, counseled, commanded, induced, solicited, requested or assisted the actual killer in the commission of the murder in the first degree before you are permitted to find the alleged special circumstance of that first degree murder to be true as to the defendant Kenneth Duane Roy." This instruction is in the language of section 190.2, subdivision (b), which *Anderson* found unambiguous on the point: "Section 190.2(b) . . . declares that the felony-murder aider and abetter is eligible for the death penalty [or for life imprisonment without the possibility of parole] if intent to kill is proved. . . . [G]iven a realistic reading the statutory requirement that the aider and abetter intentionally aid, abet, counsel, command, induce, solicit, request, or assist any acts in the commission of first degree murder—even when applied to felony murder—is not ambiguous: the aider and abetter must intentionally aid *in a killing*." (43 Cal.3d at p. 1145, italics in original.) I would find no error in the special circumstance instructions given in this case.

Moreover, since *People* v. *Garcia* (1984) 36 Cal.3d 539 [205 Cal.Rptr. 265, 684 P.2d 826], and *People* v. *Anderson, supra,* 43 Cal.3d 1104, the California Supreme Court, in a series of cases involving use of former CALJIC No. 3.01, as modified, in accordance with *People* v. *Yarber* (1979) 90 Cal.App.3d 895 [153 Cal.Rptr. 875], has held that *Beeman*-type error is

---

[5]Similarly, the multiple-murder special circumstance finding is not infirm. (See *People* v. *Anderson, supra,* 43 Cal.3d at p. 1149 [overruling *People* v. *Turner* (1984) 37 Cal.3d 302 (208 Cal.Rptr. 196, 690 P.2d 669), to the extent it holds intent to kill is an element of the multiple-murder special circumstance].)

to be treated as *Chapman* error. (See *People* v. *Dyer, supra,* 45 Cal.3d at pp. 59-65; *People* v. *Odle, supra,* 45 Cal.3d at pp. 410-416; *People* v. *Warren, supra,* 45 Cal.3d at pp. 486-488; *People* v. *Keenan, supra,* 46 Cal.3d at pp. 503-504.) The *Chapman* test is whether we can determine beyond a reasonable doubt that the error did not affect the verdict. Here, defendant argues the trial court erred in instructing the jury based on CALJIC Nos. 3.01, 3.00, and 8.27, claiming the error withheld the intent to kill issue from the jury and thus required setting aside its findings and convictions of second degree murder against Clark and first degree murder against Mannix.

Defendant claims he had no intent to kill either Clark or Mannix; that he was defending himself against Clark. The jury obviously rejected that defense and convicted him of second degree murder. Implicit in the jury's verdict is a finding that defendant had the intent to kill. The jury also resolved the intent issue adversely to defendant on the first degree murder conviction of Mannix. In addition to the instructions on the intent to kill, the court also read the instruction on aiding and abetting. Although the latter instruction contained the *Beeman* flaw, it informed the jury that defendant's state of mind was relevant to the aiding an abetting question. Former CALJIC No. 3.01 provides, "A person aids and abets the commission of a crime if, *with knowledge of the unlawful purpose of the perpetrator* of the crime, *he aids, promotes, encourages or instigates by act or advice the commission of such crime.* . . ." (Italics added.) The issue raised encompasses *Beeman*-type error, that is, whether on the whole record the court is convinced beyond a reasonable doubt that it is not reasonably possible the jury would have not found intent by the defendant to kill Mannix either as the actual killer or as an aider and abettor. Applying the *Chapman* standard, I would conclude the evidence in this instance compels the conclusion that the instructional errors were harmless beyond a reasonable doubt.

Concerning the murder of Archie Mannix for which defendant was convicted of murder in the first degree, the defense was denial, putting the People to their proof. A stab wound to the heart and drowning were concurrent causes of Mannix's death. The jury verdict that, as to the murder of Mannix, the defendant was armed with but did not personally use a knife necessarily implies that, if the jury believed the defendant was the actual killer, he killed Mannix by drowning. If the jury believed defendant was not the actual killer, the verdict implies he aided and abetted his partner, McHargue, in the stabbing and/or the drowning. In either event, the evidence shows overwhelmingly defendant's intent to cause Mannix's death.

Additionally, Sidney Hall was an inmate with defendant at Butte County jail. Hall testified that defendant admitted killing Clark (the other murder

victim) after Clark had hit him over the head with a stick. McHargue and Mannix were fighting. McHargue was "getting the worst end of it," so defendant went to his aid. Defendant told Hall "that Mannix had to die because he was a witness, and that he was stabbed and drowned—held under the water." Defendant also told Hall that a woman drove by and stopped. McHargue went to talk to her, but defendant "was too far away and he didn't think she could identify him at all." Defendant later denied to Hall any involvement in Mannix's killing.[6]

The woman who drove by and stopped was Marie Smart. She was driving by the scene and observed a truck in a ditch and two silhouettes. She stopped, with her car's headlights, which were on high beam, shining directly onto the truck. To the left side of the truck she observed two men standing. She asked if they needed any help, and they both approached the car. One of the men, later identified as McHargue, went to Smart's car window and told her they had already summoned help. (Smart was unable to identify defendant as the second man, who had approached to about two feet from the car but did not come to the window.) As she turned her car around to leave, Smart noticed a man lying on the ground, to the left side of the truck and at the location she first observed McHargue and the other man standing. The man lying on the ground was shirtless and appeared to he hurt, moving his hands up toward his stomach and back down again. As Smart was leaving the scene, McHargue and the other man returned to their original positions, standing over the apparently disabled man on the ground and doing nothing. When Mannix's body was discovered by authorities, his torso was bare.[7]

Dr. Pierce Rooney, a forensic pathologist, testified that Mannix had suffered a nonfatal stab wound to his abdomen. Mannix had also suffered a mortal stab wound to his heart and considerable drowning, each of which was a cause of Mannix's death. Death from the type of stab wound to the heart suffered by Mannix would, in the ordinary case, occur within a few minutes if not instantaneously.

Defendant and McHargue were eventually detained for questioning. Defendant did not respond when informed that Clark and Mannix had been

---

[6] William Hudspeth, another inmate at the jail with defendant, also testified for the People. He testified that defendant admitted his and McHargue's plan to rob and kill both Clark and Mannix. He also admitted to Hudspeth that he had stabbed Mannix. Hudspeth's testimony should be disregarded, however, because the jury obviously disbelieved it. The verdict of second degree murder as to Clark, as well as the acquittal of the charge of robbery as to Clark, reflects the jury's belief that there was no "plan" to rob and kill him. Further, the finding that, as to Mannix, defendant did not personally use a knife reflects the jury's belief that defendant was not the person who actually inflicted the knife wounds.

[7] Smart's testimony, coming as it did from a disinterested witness, must have been most damaging. Indeed, during deliberation, hers was the only testimony the jury requested to be read back.

discovered, dead. Defendant initially denied being with them when the truck ran into the ditch. But when informed that his story did not jibe with McHargue's, defendant admitted he and McHargue were with Clark and Mannix when the truck ran into the ditch. Defendant admitted stabbing Clark after Clark had allegedly struck defendant. Defendant denied any knowledge about what happened to Mannix, stating only that when he (defendant) turned around after stabbing Clark, Mannix was already in the ditch.[8] Defendant said he and McHargue then walked back to town. After giving his statement, defendant was arrested. Among the items found in defendant's possession were a watch with dried blood and dirt on it and a key ring with six keys, both of which items were identified as Mannix's. Defendant also had a wallet containing $170.53. One week before the homicide, Mannix was observed with a large sum of money in his wallet, including tens and hundreds. Mannix's wallet and scattered documents, but no money, were found near his body.

Applying the *Chapman* test, the recited evidence from the record demonstrates to me, beyond a reasonable doubt, that the *Beeman* error could not have affected the verdict. (See *People* v. *Dyer, supra,* 45 Cal.3d at pp. 64-65; see also *People* v. *Garrison* (1989) 47 Cal.3d 746, 775-776 [254 Cal.Rptr. 257, 765 P.2d 419].)

I would affirm the judgment.

A petition for a rehearing was denied February 22, 1989, and the petitions of appellant and respondent for review by the Supreme Court were denied May 4, 1989.

---

[8] Defendant also told Dr. Globus, the defense psychiatrist, that he was aware Mannix had ended up dead in the ditch, but defendant denied actually killing him.