[No. H002889. Sixth Dist. Mar. 22, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
STEVE HALL, Defendant and Appellant.

COUNSEL

Michael Kresser, under appointment by the Court of Appeal, Charles Robinson and Marisa Nayfach for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Martin S. Kaye and Dane R. Gillette, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**ZECHER, J.**\*—Defendant Steve Hall appeals from a judgment after jury trial. The jury found him guilty of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)), and found true the allegation that he personally used a wok as a dangerous and deadly weapon (Pen. Code, § 1192.7). He was acquitted of the charge of dissuading a witness (Pen. Code, § 136.1, subd. (c)). A mistrial was declared as to the burglary charge (Pen. Code, §§ 459/460, subd. 1) because the jury was unable to reach a verdict. That count was subsequently dismissed. Hall was sentenced to state prison for a term of four years.

We find no merit in Hall's claim that the trial court erred (1) in admitting evidence that he had initially refused to give his name to an arresting officer, and (2) in sentencing him to the aggravated term.

FACTUAL SUMMARY

On September 11, 1986, Ronald Lee and his wife Nancy were asleep in their locked apartment. Between 3:30 and 4 a.m., Nancy Lee awoke to find a man in their room standing over her husband's side of the bed with an object in his hands. Ronald Lee then awoke, saw the man, and tried to push

---

\* Assigned by the Chairperson of the Judicial Council.

him out of the room. The man whom both Lees later identified as appellant Hall began hitting Ronald Lee with the flashlight he had in his gloved hand.

Nancy made an unsuccessful attempt to reach the police emergency 911 line. The men continued struggling in the bedroom. Hall tried to choke Ronald Lee and hit him with his fists. Hall then grabbed a wok which was on the patio and struck Ronald Lee on the head with it several times.

During the struggle, Nancy Lee returned with their gun. She pointed it at Hall and told him to get off her husband. When Hall tried to grab the gun, Nancy Lee screamed. A neighbor, Philip Vezinaw, awakened by the noise, saw Hall "beating on" Ronald Lee and came to his aid. Vezinaw hit Hall with a half-inch dowel until it broke.

Hall eventually knocked Ronald Lee down and fled from the apartment. Hall jumped a fence and ran into a parking lot. Ronald Lee grabbed the gun and pursued Hall. Vezinaw, with another stick, joined the chase.

Hall ran behind a car. He was stopped by Vezinaw who struck Hall with the stick. Hall insisted, "I am not the guy." He jumped back, however, when Ronald Lee arrived and fired a warning shot. Both men then held Hall until the police arrived.

San Jose Police Officer Mike Smith arrived at approximately 4:20 a.m. and placed Hall under arrest. Hall did not seem to be injured. When asked his name, Hall "did not [respond] at first."

At the time of his arrest, Hall was not carrying a wallet or any identification. He was carrying $929. The bills were folded and tied with a rubber band. There were no $10 bills. Ronald Lee later discovered that between $175 and $200 were missing from his wallet left on his desk. He told one of the officers who reported to the scene that the money taken was in $10 and $20 bills.

The Lees found pry marks on the living room sliding glass door and indications of tampering with its lock. They discovered Hall's flashlight on the living room floor and a pair of gloves on the bedroom patio.

The defense case was based upon the testimony of Hall and that of his friend Clifford Scott, a maintenance oil worker in Pittsburg.

Hall testified that on the evening of September 10th, he and Scott were having coffee at a restaurant near Concord when he asked for a ride in Scott's truck. In his back pocket, Hall had a wallet containing $2,000 in

$100 bills; in his front pocket he had almost $1,000 wrapped in a rubber band. The money represented savings as well as the proceeds from the sale of a car. Hall drove Scott's truck. He brought a flashlight from his own car in case Scott's was not operable.

The men drove to San Jose so Hall could purchase about $1,000 worth of cocaine. About a week earlier, Hall had been given the name and address of a dealer and directions to his apartment. They arrived at that location about 3 a.m. Hall went to knock on the sliding glass door. Scott, wanting "no part" of the deal, stayed behind.

According to Hall, Ronald Lee answered the door. He had been expecting Hall.[1] Ronald Lee invited him inside. They went to the bedroom where Ronald Lee displayed a plastic bag containing white powder. Hall tasted it, discovered it was not cocaine, and accused Ronald Lee of trying to cheat him. The men fought on the adjoining patio. When Ronald Lee told his wife to get a gun, Hall grabbed him by the throat. Hall then pushed Ronald Lee and the gun. At trial, Hall denied hitting Ronald Lee with his flashlight or with a wok and claimed that no one on the patio struck him with a stick.

Hall testified that Ronald Lee and Vezinaw chased him, that he sustained more than 50 blows from both of them, and that he had been almost unconscious.[2] He claimed that during the beating, Ronald Lee stole his wallet and his money. The piece of paper with the Lees' address on it was in the stolen wallet. Hall denied threatening the Lees at the time of his arrest.

Scott testified that he did not know until they arrived in San Jose that Hall intended to purchase cocaine. Scott, who had stayed behind when Hall went to the apartment, heard someone scream and then saw Hall come "busting out" of the apartment followed by a man with a gun who fired it once.

On rebuttal, Ronald Lee denied having had any cocaine inside his apartment and denied any prearrangement to sell Hall cocaine.

## DISCUSSION

### I.

▮▮▮ Hall first contends that the trial court erred in admitting evidence that he initially refused to give his name to an arresting officer.

---

[1] Hall admitted he had not called ahead, but testified that Lee said the man who had given Hall Lee's name had done so, even though Hall had not seen the man that evening.

[2] Photographs were introduced into evidence which were taken after Hall's arrest and which did depict bruises on his body.

Defense counsel made an *in limine* motion asking the trial court to order the prosecutor and her witnesses not to comment on his client's invocation of his *Miranda* rights. (*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].)

The prosecutor agreed not to mention Hall's invocation of his *Miranda* rights. However, she argued that an arresting officer's comment that Hall was uncooperative and initially refused to give his name was admissible.

After concluding it was irrelevant whether Hall refused to give his name to the officer before or after being advised of his *Miranda* rights, the trial court ruled that the officer could testify that when asked his name, Hall refused to give it.

Consequently, over defense objection, the prosecutor ended her direct examination of Officer Smith with the following interchange: "Q. Did you ask the defendant what his name was? [¶] A. Yes, I did. [¶] Q. And what was his—did he give you his name? [¶] A. No, he did not at first."

Hall's argument that the above testimony was inadmissible is based primarily upon the holding in *People* v. *Rucker* (1980) 26 Cal.3d 368 [162 Cal.Rptr. 13, 605 P.2d 843]. That case recognized the legitimate need for police personnel to obtain basic, neutral information such as name and address from an arrestee in their custody. It found that advisement of *Miranda* rights was unnecessary prior to eliciting this type of basic information having nothing to do with the circumstances surrounding any offense with which the defendant has been charged. The court in *Rucker* concluded that the need to obtain such information "can be accommodated by permitting the state to obtain from an arrestee the basic, neutral information that is necessary for proper jail administration, but forbidding the state from using the arrestee's responses in any manner in a subsequent criminal proceeding. Therefore, *Miranda* warnings need not be given at a booking interrogation, since the information acquired cannot be put to any incriminatory uses." (*Id.* at p. 389.)

By analogy, Hall argues that the state cannot put his refusal to provide such basic information to any incriminatory use. This argument is predicated upon his claim that *Rucker* was unaffected by the enactment of article I, section 28, subdivision (d) of the California Constitution (otherwise known as Prop. 8).[3] In support of this claim, Hall argues that Evidence Code

---

[3] Article I, section 28, subdivision (d), of the Constitution states in pertinent part: "Except as provided by statute hereafter enacted by a two-thirds vote of the membership in each house of the Legislature, relevant evidence shall not be excluded in any criminal proceeding

section 940 is the type of "existing statutory rule relating to privilege" protected by the savings clause in article I, section 28, subdivision (d), of the Constitution, and that the rule in *Rucker* falls within section 940.[4]

Although the trial court's admission of Hall's refusal to provide his name to the arresting officer may well violate the proscription announced in *Rucker,* we agree with respondent that article I, section 28, subdivision (d), abrogates the *Rucker* exclusionary rule.

Our conclusion that *Rucker* does not survive Proposition 8 is based primarily upon the Supreme Court's recent analysis of a similar issue in *People* v. *May* (1988) 44 Cal.3d 309 [243 Cal.Rptr. 369, 748 P.2d 307].

The court in *May* held that Proposition 8 abrogated the rule of *People* v. *Disbrow* (1976) 16 Cal.3d 101 [127 Cal.Rptr. 360, 545 P.2d 272], which forbade for impeachment purposes the use of a defendant's extrajudicial statements elicited in violation of *Miranda*. The rule in *Disbrow* was contrary to the federal rule under the United States Constitution as enunciated by the United States Supreme Court in *Harris* v. *New York* (1971) 401 U.S. 222 [28 L.Ed.2d 1, 91 S.Ct. 643].

The court in *May* reasoned that its holding in *In re Lance W.* (1985) 37 Cal.3d 873, 886-887 [210 Cal.Rptr. 631, 694 P.2d 744], that "[w]hat [the pertinent portion of] Proposition 8 does is to eliminate a judicially created *remedy* for violations of the search and seizure provisions of the federal or state Constitutions, through the exclusion of evidence so obtained, except to the extent that exclusion remains federally compelled" was equally applicable to remedies for violation of constitutional rights to counsel and rights against self-incrimination.[5]

The court concluded that "*Disbrow* did not [purport to] define the scope of the California constitutional privilege against self-incrimination now set forth at article I, section 15. In *Disbrow* as in *People* v. *Brisendine* (1975) 13 Cal.3d 528 [119 Cal.Rptr. 315, 531 P.2d 1099], on which it relied, the court [ ] [created a new remedy for violations of *Miranda,* but did not reinterpret or extend] the scope of the substantive rights protected by the Constitution.

---

. . . . Nothing in this section shall affect any existing statutory rule of evidence relating to privilege or hearsay, or Evidence Code, Sections 352, 782 or 1103."

[4] Evidence Code section 940 provides: "To the extent that such privilege exists under the Constitution of the United States or the State of California, a person has a privilege to refuse to disclose any matter that may tend to incriminate him."

[5] Hall's suggestion that his silence may have been protected by the holding in *Doyle* v. *Ohio* (1976) 426 U.S. 610 [49 L.Ed.2d 91, 96 S.Ct. 2240], must be rejected. *Doyle* "rests on the Due Process Clause, not the Fifth Amendment." (*Wainwright* v. *Greenfield* (1986) 474 U.S. 284, 293, fn. 10 [88 L.Ed.2d 623, 631, 106 S.Ct. 634].)

(See *In re Lance W., supra,* 37 Cal.3d 873, 886-887.) Consequently, section 940, which relates only to substantive, not remedial, rights cannot be relied upon to save the exclusionary rule set forth in *Disbrow*." (*People* v. *May, supra,* 44 Cal.3d at p. 317.)

The rule announced in *Rucker* is not federally compelled. ■ In *Rhode Island* v. *Innis* (1980) 446 U.S. 291 [64 L.Ed.2d 297, 100 S.Ct. 1682], the United States Supreme Court concluded that "the definition of [the word] interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response." (*Id.* at p. 302, fn. omitted [64 L.Ed.2d at p. 308].) The court's specific exclusion of words and actions "normally attendant to arrest and custody" from the definition of "interrogation" suggests that routine booking inquiries are outside the scope of interrogation. (*Id.* at p. 301 [64 L.Ed.2d at p. 308].) *Innis* thus reinforces the proposition that "[d]espite the breadth of the language used in *Miranda,* the Supreme Court was concerned with protecting the suspect against interrogation of an investigative nature rather than the obtaining of basic identifying data required for booking and arraignment." (*United States* ex rel. *Hines* v. *LaVallee* (2d Cir. 1975) 521 F.2d 1109, 1112-1113, cert. den. (1976) 423 U.S. 1090 [74 L.Ed.2d 101, 96 S.Ct. 884].) Furthermore, a majority of the federal circuit courts have held that incriminating evidence derived from a routine booking interview is admissible despite the fact that no *Miranda* warnings were given. (See e.g., *United States* v. *Taylor* (4th Cir. 1986) 799 F.2d 126, 128; *United States* v. *McLaughlin* (8th Cir. 1985) 777 F.2d 388, 391-392; *United States* v. *Menichino* (5th Cir. 1974) 497 F.2d 935, 940-941; contra, *United States* v. *Downing* (1st Cir. 1981) 665 F.2d 404, 406; *Proctor* v. *United States* (D.C. Cir. 1968) 404 F.2d 819, 820-821 [131 App.D.C. 241].)

■ Nor does the rule in *Rucker* interpret or extend substantive rights protected by the Constitution. Instead it created a remedial right. Therefore, section 940 cannot be relied upon to save its exclusionary rule, and "the relevant provision of Proposition 8 requires the abrogation of [its] judicially declared exclusionary remedy . . . ." (*People* v. *May, supra,* 44 Cal.3d at p. 317.)

Accordingly, we find no error in the admission of Hall's refusal to identify himself to the arresting officer.

## II.

■ Hall next contends that the trial court erred by sentencing him to the aggravated term because the factors in aggravation relied upon by the trial court were unsupported by the evidence. We disagree.

In sentencing Hall to the aggravated term, the court relied upon the fact that the victims were particularly vulnerable, that the crime was premeditated, and that Hall's offenses were becoming increasingly serious.

While a single proper aggravating circumstance is sufficient to justify an upper term (*People v. Covino* (1980) 100 Cal.App.3d 660, 670 [161 Cal.Rptr. 155]), we find that each circumstance relied upon by the court is supported by the record and is a proper factor in aggravation.

The trial court was entitled to believe the Lees and therefore to conclude that a first degree burglary had occurred. In turn, the court was entitled to aggravate Hall's sentence on the basis of the commission of the burglary, even though the jury was unable to reach a verdict on that charge. (See *People v. Fulton* (1970) 92 Cal.App.3d 972 [155 Cal.Rptr. 327] [where the court approved using as an aggravating factor the commission of a rape even though the jury had hung on the charge].)

Hall first takes exception to the court's conclusion that the Lees were particularly vulnerable within the meaning of California Rules of Court, rule 421(a)(3), by noting that they were two adults against a single intruder and that they were armed with a gun. His argument overlooks the fact that the courts have recognized the vulnerability of those attacked while in their own home. (*People v. Fields* (1984) 159 Cal.App.3d 555, 569-570 [205 Cal.Rptr. 888]; *People v. Salazar* (1983) 144 Cal.App.3d 799, 813 [193 Cal.Rptr. 1]; *People v. Wilson* (1982) 135 Cal.App.3d 343, 358 [185 Cal.Rptr. 498].)

The trial court correctly found that the crime "happened as a result of the planned entry into a domicile of people" pursuant to California Rules of Court, rule 421(a)(8). The fact that Hall was carrying a flashlight, that the living room sliding glass door had been tampered with to permit entry, and that a pair of gloves was found on the patio the next day amply support the finding of planning. It is argued that no pry tool was recovered at the scene. However, the absence of such evidence does not preclude the reasonable assumption that Hall brought such a tool to the scene. (See *People v. Berry* (1981) 117 Cal.App.3d 184, 193 [172 Cal.Rptr. 756].)

The trial court's finding that Hall's "prior convictions are becoming more serious" is also amply supported by the record. Hall had eight misdemeanor convictions, the most recent of which involved prowling. Where it appears that the defendant is escalating from petty to more serious offenses, as in this case, imposition of the upper term is warranted. (*People v. Ramos* (1980) 106 Cal.App.3d 591, 609-610 [165 Cal.Rptr. 179].)

The judgment is affirmed.

Agliano, P. J., and Brauer, J., concurred.