**David Luther GHENT, Petitioner–Appellant,**

**v.**

**Jeanne S. WOODFORD, Warden, of California State Prison at San Quentin, Respondent–Appellee.**

No. 99–99025.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 13, 2001.

Filed Feb. 8, 2002.

Amended March 11, 2002.

---

22. Fed.R.Crim.P. 46(e)(2) (2001).

Douglas R. Young, Claudia A. Lewis, Jennifer Schwartz, Grace K. Won and Kelly A. Woodruff, Farella Braun & Martel, LLP, San Francisco, CA, for the petitioner-appellant.

Joan Killeen, Deputy Attorney General, and Peggy S. Ruffra, Supervising Deputy Attorney General, San Francisco, CA, for the respondent-appellee.

Before: REINHARDT, HAWKINS, and RAWLINSON, Circuit Judges.

REINHARDT, Circuit Judge.

David Luther Ghent, a prisoner currently on California's death row, appeals the district court's dismissal of his habeas corpus petition and asks this court for relief on several grounds related to both his convictions and his death sentence. We hold that the district court erred in finding the admission of testimony in violation of Ghent's *Miranda* rights in the special circumstances retrial to be harmless error. Accordingly, we reverse the district court's holding in part and remand with instructions to vacate Ghent's death sentence. As to Ghent's other claims, we reject those that seek relief from his convictions and do not reach those that involve the penalty phase of his trial.

I. *Background*

The following facts are taken from the California Supreme Court's decision in *People v. Ghent*, 43 Cal.3d 739, 239 Cal.

Rptr. 82, 739 P.2d 1250 (1987). Additional facts pertinent to each claim will be presented in the relevant sections.

In the early morning hours of February 21, 1978, Ghent entered the bedroom of his housemate, Jacqueline Preskitt. He jumped onto her bed and requested a sexual act, ignoring her screaming and struggling. Ms. Preskitt's child entered the bedroom, interrupting Ghent's advances. Ghent then left the house at approximately five a.m.

Ghent arrived a little while later at the home of some acquaintances, Paul and Patricia Bert. Mrs. Bert informed Ghent that her husband had already left for work. According to Ghent, while Mrs. Bert was writing down her husband's phone number at his request, her robe fell open, revealing her naked body. Ghent testified that his next memory was that he was standing over Mrs. Bert's dead, nude, body with a bloody knife in his hand. Mrs. Bert's hands were tied behind her back.

Ghent testified that, after coming to and seeing the result of his actions, he vomited in a toilet and then began to call the police but became scared and left the house instead. He returned shortly thereafter and removed his fingerprints from inside the house and retrieved the murder weapon. He then left for a second time and went to change his bloody pants at a friend's house.

The autopsy surgeon counted twenty-one stab wounds in Mrs. Bert's neck and chest. Sperm was found in her genital cavity that came from a Group B type "donor." Both the Berts were Group A type, while Ghent was Group B.

The California Supreme Court stated that Ghent's primary defenses at trial were his "lack of deliberation and premeditation, and insufficiency of the evidence to establish forcible rape." *Id.* at 1256.

Ghent was tried under the State's 1977 death penalty law. *Id.* at 1255. On August 7, 1979, the original jury found him guilty of first degree murder and attempted rape of Patricia Bert, and assault with intent to commit rape of Jacqueline Preskitt. It deadlocked, however, regarding the special circumstances allegation: that Ghent committed a premeditated, willful, and deliberate murder during the commission or attempted commission of a rape. A second jury was chosen and that jury found the special circumstance to be true on September 21, 1979. The second jury proceeded to the penalty phase and after a five-day hearing sentenced Ghent to death. The California Supreme Court affirmed Ghent's conviction and sentence on August 13, 1987, and a petition for certiorari was denied on February 29, 1988. *Ghent v. California*, 485 U.S. 929, 108 S.Ct. 1099, 99 L.Ed.2d 261 (1988). Subsequently, Ghent filed a state petition for a writ of habeas corpus in the California Supreme Court which was summarily denied on August 22, 1990.

■ Ghent filed a federal habeas petition on June 18, 1992 and an amended habeas petition in federal district court on November 16, 1994.[1] The district court denied Ghent's habeas petition in two orders. Ghent subsequently filed a timely notice of appeal. Because the notice of appeal was filed after AEDPA's effective date, a Certificate of Appeal ("COA") is required. *See Slack v. McDaniel*, 529 U.S.

---

1. The Antiterrorism and Effective Death Penalty Act's (AEDPA) amendments to 28 U.S.C. § 2254 apply only to petitions filed after April 24, 1996, the statute's effective date. *Lindh v. Murphy*, 521 U.S. 320, 327, 117 S.Ct. 2059,

138 L.Ed.2d 481 (1997); *see also Jeffries v. Wood*, 114 F.3d 1484, 1495–96 (9th Cir.1997) (en banc). Because Ghent filed his petition prior to that date, AEDPA does not apply to the merits of the petition.

473, 478, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). We treat Ghent's notice of appeal as an application for a COA, *see id.* at 483, 120 S.Ct. 1595; *Schell v. Witek*, 218 F.3d 1017, 1021 n. 4 (9th Cir.2000) (en banc), and conclude that Ghent has made a "substantial showing of the denial of a constitutional right" for all of the issues briefed to this court. 28 U.S.C. § 2253(c)(2) (1994 ed., Supp. III). Therefore, we proceed to the merits of his claims.

## II. *The Erroneous Admission of Testimony*

Following his arrest on February 22, 1978, Ghent was interrogated by Officers DeSart and Pate of the Santa Clara County Sheriff's Department. *Ghent*, 239 Cal. Rptr. 82, 739 P.2d at 1256. Although he initially waived his *Miranda* rights, Ghent later asked several times for the assistance of an attorney. *Id.* Despite these requests, the officers continued their interrogation. *Id.* They encouraged Ghent to speak with Dr. Shoor, a psychiatrist who had been previously retained by the department. *Id.* They told Ghent to discuss any "sex problem" he had with the psychiatrist. They did not tell Ghent, however, that his statements during the psychiatric exam could be used against him in a criminal proceeding; instead they said that the conversation would be a private one between Dr. Shoor and Ghent. Upon Dr. Shoor's arrival, Ghent was readvised of his *Miranda* rights. *Id.* He was told that Dr. Shoor's report could be used against him in court. Dr. Shoor interviewed Ghent for approximately forty-five minutes. *Id.*

Upon review of these facts, all courts have held that the admission of the testimony of Dr. Shoor and DeSart was in violation of Ghent's Fifth Amendment right to be free from self-incrimination. The California Supreme Court held that the testimony of DeSart and Dr. Shoor was inadmissible "by reason of a violation of *Miranda* principles," *id.*, and the federal district court agreed. Because it is a violation of *Miranda* to question an individual who is in custody after he has requested counsel, the State does not challenge either of these courts' holdings. Therefore, we proceed to the issue of the prejudicial effect of the admission of De-Sart's and Dr. Shoor's testimony at the various stages of the proceedings.

### A. *Standard of Review*

The admission of testimony in violation of *Miranda* constitutes a violation of Ghent's due process rights. *See Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Edwards v. Arizona*, 451 U.S. 477, 484–85, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); *see also Dickerson v. United States*, 530 U.S. 428, 443–44, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000). However, the finding of constitutional error does not automatically necessitate reversal. The erroneous admission of statements taken in violation of a defendant's Fifth Amendment rights is subject to harmless error analysis. *Neder v. United States*, 527 U.S. 1, 18, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999); *Henry v. Kernan*, 197 F.3d 1021, 1029 (9th Cir. 1999). Despite the state supreme court's and the district court's finding of a constitutional violation, both courts held that the erroneous admission of Dr. Shoor and De-Sart's testimony was harmless error. The district court's determination of whether an error was harmless is a mixed question of law and fact that is reviewed *de novo* by this court. *Suniga v. Bunnell*, 998 F.2d 664, 667 (9th Cir.1993); *see also Brecht v. Abrahamson*, 507 U.S. 619, 642, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (Stevens, J., concurring). The state court's conclusion that a constitutional error was harmless is also reviewed *de novo* in all pre-AEDPA cases. *Lawson v. Borg*, 60 F.3d 608, 612

(9th Cir.1995); *Dickson v. Sullivan,* 849 F.2d 403, 405 (9th Cir.1988).

 In undertaking our *de novo* review of the prejudicial effect of the erroneous admission of testimony, the question is whether the erroneously admitted evidence had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht,* 507 U.S. at 637, 113 S.Ct. 1710 (quoting and adopting standard in *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)); *see also Bains v. Cambra,* 204 F.3d 964, 977 (9th Cir.2000). A reviewing court does not examine whether there was sufficient evidence to support the conviction in the absence of constitutional error. *See Standen v. Whitley,* 994 F.2d 1417, 1423 (9th Cir.1993). Rather, regardless of whether there is sufficient evidence to support the conviction apart from the error, we must determine whether the error had a "substantial and injurious effect or influence" on the conviction before us on appeal. *See Kotteakos,* 328 U.S. at 765, 66 S.Ct. 1239; *Hanna v. Riveland,* 87 F.3d 1034, 1039 (9th Cir.1996). If we conclude that it did, we must set aside the jury's findings.

## B. *Analysis*

The State introduced testimony by Dr. Shoor at both the trial and the special circumstances retrial.[2] In both of these proceedings, issues were raised concerning Ghent's state of mind at the time of the crimes. Ghent primarily challenged the extent of his culpability under the law as opposed to asserting his actual innocence of the acts charged. This challenge shapes the harmless error analysis we must undertake. Several cases find the erroneous admission or exclusion of evidence harmless because of the overwhelming evidence of the guilt of the defendant. *See, e.g., United States v. Meza–Corrales,* 183 F.3d 1116, 1126 (9th Cir.1999); *United States v. Gonzalez–Sandoval,* 894 F.2d 1043, 1047 (9th Cir.1990). However, here, unlike in those cases, whether the defendant actually committed the acts alleged was not a seriously disputed issue. Thus, the quantum of evidence on that point is irrelevant to our prejudice analysis. In order to determine whether the admission of the erroneously admitted testimony was prejudicial, we must examine the effect of that testimony on the question of Ghent's mental state, not on the question whether Ghent actually committed the underlying criminal acts.[3]

Our evaluation is divided into two separate parts: the extent of the harm in the first trial (in which the jury found Ghent guilty of first degree murder) and the prejudicial effect in the special circumstances retrial (in which the jury found Ghent guilty of a special circumstance that serves as a prerequisite to the imposition of a death sentence). For the reasons explained below, we hold the erroneous admission of this testimony to be harmless in the first trial, but highly prejudicial in

---

**2.** The introduction of Dr. Shoor's testimony at the special circumstances retrial also affected the penalty phase, but as we explain, *see* infra, it is not necessary to consider any questions relating to that phase in this opinion.

**3.** *Compare People v. Rucker,* 26 Cal.3d 368, 162 Cal.Rptr. 13, 605 P.2d 843, 852 (1980) (holding admission of defendant's statements taken in violation of *Miranda* prejudicial because statements went directly to defense in-

volving defendant's mental state), *recognized as overruled on other grounds by People v. Hall,* 199 Cal.App.3d 914, 245 Cal.Rptr. 458 (1988); *with Pope v. Zenon,* 69 F.3d 1018, 1025 (1996) (holding erroneous admission of defendant's statements in violation of *Miranda* harmless because statements went to guilt and defense at trial focused on defendant's mental state), *overruled on other grounds by United States v. Orso,* 266 F.3d 1030, 1038 (9th Cir.2001).

the special circumstances retrial. Because of the latter holding, we need not reach the question of the effect of the evidence on the penalty phase, or indeed any question relating to that phase.

### 1. *The First Trial*

At the first trial, Ghent was convicted of first degree murder of Mrs. Bert as well as her attempted rape. Under California law at the time Mrs. Bert was murdered, a conviction of first degree murder required proof of a "willful, deliberate, and premeditated killing" *or* proof that the murder was committed in the course of a felony. *See* Cal.Penal Code § 189 (1978) (amended 1981). Attempted rape required a specific intent to rape, but not willfulness, deliberation, or premeditation. *People v. Atkins*, 25 Cal.4th 76, 104 Cal.Rptr.2d 738, 18 P.3d 660, 668 (2001). Ghent presented a defense of diminished capacity.[4] He argued that he failed to premeditate or deliberate with respect to the murder of Mrs. Bert, that he lacked the capacity to do so, and that he also lacked the capacity to form the specific intent to commit the underlying felony, the rape or attempted rape. The erroneously admitted testimony of Dr. Shoor was introduced by the State in the first trial to support its argument that Ghent had the ability to, and did in fact, premeditate and deliberate with respect to the murder, and that Ghent had the ability to, and did in fact, form the specific intent to commit rape. The prosecutor stated in his opening argument that Dr. Shoor was called by the

police to interview Ghent precisely because the State knew "that it would most probably be a psychiatric defense."

Dr. Shoor's testimony controverted Ghent's defense of diminished capacity. Dr. Shoor testified that Ghent did not suffer any diminished capacity and that he could properly be held accountable under the law. He stated explicitly that Ghent had normal mental capacity and mental functioning. Thus, the prosecutor stated, correctly, that Dr. Shoor's testimony went to the question whether Ghent had the capacity to commit the offenses charged.

A more particular analysis of the case against Ghent is required, however, before we can proceed further with our inquiry into prejudice. In order to convict Ghent of first degree murder, the State needed to prove only one of two alternative theories: 1) that Ghent committed a willful, deliberate, and premeditated murder *or* 2) that Ghent raped or attempted to rape Mrs. Bert and murdered her during the course of that offense (felony murder). *See* Cal.Penal Code § 189 (1978) (amended 1981). Our review of the record persuades us that to decide whether Dr. Shoor's testimony was prejudicial with respect to Ghent's first degree murder conviction, we must first determine on which of the two alternative theories the jury based its verdict.

Although the jury found Ghent guilty of first degree murder and of attempted rape, it hung on the special circumstances finding. As stated previously, a special circumstances verdict would have required

---

**4.** The term "diminished capacity" refers to a person's lack of capacity "to achieve the state of mind requisite for the commission of the crime." *McGuire v. Superior Ct. for Los Angeles County*, 274 Cal.App.2d 583, 79 Cal.Rptr. 155, 161 (1969); *see also United States v. Twine*, 853 F.2d 676, 678 (9th Cir.1988). The

defense of diminished capacity, although abolished by California statute as of January 1, 1982, remains available for crimes committed before that date. *People v. Mickey*, 54 Cal.3d 612, 286 Cal.Rptr. 801, 818 P.2d 84, 92 n. 1 (1991).

the jury to find that Ghent committed a willful, deliberate, and premeditated murder *and* that this murder occurred during the commission of one of the enumerated felonies, including rape and attempted rape. Because the jury found that Ghent had in fact committed attempted rape, if its verdict of first degree murder had been based on a determination that Ghent committed a "willful, deliberate, and premeditated" murder (rather than a felony murder), the prerequisites for a finding of special circumstances would have been satisfied and the jury would undoubtedly have found him guilty of the special circumstance charged. The jury's failure to find special circumstances makes it apparent that it must have based Ghent's conviction for first degree murder on the alternative theory, specifically on felony murder—that it must have based the conviction on the finding that Ghent committed the murder in the course of committing the sexual assault. Accordingly, when examining the prejudicial effect of Dr. Shoor's testimony on Ghent's first degree murder conviction, we proceed from the premise that the conviction was based on felony murder, and not on the theory that Ghent committed a willful, deliberate, and premeditated murder.

By contrast, Dr. Shoor's testimony was directed primarily to the theory that Ghent premeditated the murder, and not to the felony murder theory. To the extent that his testimony did relate to the felony murder question, it did so only with respect to whether Ghent had the ability to form the specific intent required for the underlying felony. However, Ghent's own mental health expert, Dr. Raffle, explicitly conceded that Ghent had the capacity to form and did form the specific intent to rape Mrs. Bert. Thus, Dr. Shoor's testimony was largely cumulative with respect to the jury's felony murder finding and to its

consequent finding of first degree (felony) murder. Accordingly, we conclude that the introduction of Dr. Shoor's testimony at the trial did not have a "substantial or injurious effect" on the jury's verdict or constitute prejudicial error. *Brecht*, 507 U.S. at 637, 113 S.Ct. 1710.

### 2. *The Special Circumstances Retrial*

██ Our conclusion that Dr. Shoor's testimony was not prejudicial with respect to the first trial does not apply, however, with respect to the special circumstances retrial; to the contrary, it is clear that the introduction of Dr. Shoor's testimony at that proceeding *was* prejudicial. At the retrial, the finding of special circumstances required that the State prove beyond a reasonable doubt that Ghent's murder of Mrs. Bert was willful, deliberate, and premeditated. *See* Cal.Penal Code § 190.2(a)(3). Accordingly, the issue of premeditation and deliberation was the central issue of the special circumstances retrial. The prosecutor himself repeatedly characterized that issue as "the major issue in this case." *See Henry v. Kernan*, 197 F.3d 1021, 1030 (9th Cir.1999) (noting that, "[i]mportantly, the prosecutor referred to [defendant's] motivation [and subject of erroneously admitted testimony] as 'the crux of the case' ").

Dr. Shoor's testimony was critical to the theory that Ghent premeditated and deliberated with respect to the murder. In his opening statement, the prosecutor stated that Dr. Shoor gave Ghent a mental examination and "determined that this guy is fine. He has no diminished capacity." Contrary to the State's argument, Dr. Shoor's testimony was not solely general in nature. Rather, it clearly included his opinion as to Ghent's mental state at the

time of the murder. He testified that "Mr. Ghent had the mental capacities *at that time* which were well within the range of normal reasonable thinking." (emphasis added). Dr. Shoor also testified that Ghent had "the mental capacities to premeditate *whatever he did.*" (emphasis added). Although Dr. Shoor spoke specifically in terms of Ghent's capacity to premeditate, given the context of his testimony and the fact that he had met with Ghent shortly after the crimes took place, it is clear that Dr. Shoor's evidence was offered to and did provide strong support for the State's theory that Ghent in fact premeditated and deliberated with respect to the murder, and that his testimony would be so construed by reasonable jurors. The prosecutor himself stated that Dr. Shoor's testimony would be given to assist the jury "in determining what David Ghent's state of mind was at the time of the incident." Although Dr. Shoor's statements at the special circumstances retrial were comparatively brief, they were direct and to the point: they constituted the only direct evidence offered by the prosecution as to Ghent's state of mind.[5]

The defense relied heavily on the testimony of two mental health experts, both of whom disagreed with Dr. Shoor's assessment. Dr. Raffle (forensic psychiatrist) testified that Ghent did not deliberate the murder and Dr. Delman (psychologist) testified that Ghent did not premeditate or deliberate the murder. In his closing argument, defense counsel relied on the testimony of these two defense experts to show that Ghent did not premeditate or deliberate with respect to the murder. Dr. Shoor's testimony was introduced to immunize the jury against this crucial defense evidence. Indeed, Dr. Shoor's testimony went to the heart of Ghent's defense. *See Henry,* 197 F.3d at 1030(holding error prejudicial because State's use of erroneously admitted testimony went to "the root of their burden to prove ... intent"); *People v. Walker,* 29 Cal.App.3d 448, 105 Cal. Rptr. 672, 676–77 (1972) (finding it prejudicial error to admit testimony of police psychologist whose interview violated defendant's Fifth Amendment rights because testimony went "directly to the heart of the defense" of diminished capacity).

The prosecutor not only used Dr. Shoor's testimony to discredit the testimony and theories of the two defense expert witnesses but also to attack Ghent's credibility and truthfulness. In the special circumstances retrial, Ghent's credibility was a critical issue; Ghent himself testified regarding his memory loss surrounding the crimes. The two defense experts, Drs. Raffle and Delman, also attempted to explain Ghent's memory loss and his untruthfulness to the jury. Thus, Dr. Shoor's testimony was admitted to counter directly both the defense theory and

---

5. The State contended at oral argument that Dr. Shoor's testimony had minimal importance for its case for premeditation and deliberation of the murder. It argued that the jury was able to find that Ghent premeditated and deliberated with respect to the murder by the nature of the crime, the testimony regarding Ghent's demeanor before arriving at and after leaving the Bert house, and Ghent's own testimony. First, the State fails to suggest how the majority of this evidence would enable the jury to find that Ghent premeditated and deliberated *the murder* as opposed to simply planning the rape in advance. Second, all

the evidence above was contested by the defense. Although the State suggested the theory that Ghent murdered Mrs. Bert on his second trip to the house, there was conflicting evidence on this (including Ghent's own testimony). There was also conflicting evidence about the meaning of the nature of the murder (e.g. whether multiple stab wounds signaled an impulsive attack). Given the paucity of the other evidence that the State presented regarding premeditation and deliberation of the murder, Dr. Shoor's testimony can only be fairly characterized as extremely important.

Ghent's credibility and truthfulness. The prosecutor introduced Dr. Shoor's testimony by stating that Dr. Shoor would tell the jury that Ghent is "a liar, he's dishonest." Moreover, the California Supreme Court stated, in justifying its finding of harmlessness, that the jury's finding of special circumstances was based in part on its "rejection of the 'lost memory' theories of Drs. Raffle and Delman." *Ghent*, 239 Cal. Rptr. 82, 739 P.2d at 1259. The only expert mental health testimony presented by the State that could have enabled the jury to reject those theories was the erroneously admitted testimony of Dr. Shoor. *See Eslaminia v. White*, 136 F.3d 1234, 1238 (9th Cir.1998) (stating that when credibility is a central issue in trial and erroneously admitted evidence casts doubt on that credibility, such error is prejudicial); *cf. Arizona v. Fulminante*, 499 U.S. 279, 298, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) (holding error prejudicial as jury's assessment of another of defendant's statements could have depended in part on erroneously admitted evidence).

The State's own actions at trial belie its current arguments regarding the importance of Dr. Shoor's testimony. Its actions demonstrate just how critical the State believed the erroneously admitted evidence to be. *See Kyles v. Whitley*, 514 U.S. 419, 444, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995); *United States v. Bauer*, 132 F.3d 504, 512 (9th Cir.1997). The prosecutor in this case fought vigorously for the admission of Dr. Shoor's statements. Furthermore, he relied heavily on Dr. Shoor's testimony during both opening and closing arguments,[6] emphasizing the credibility of the doctor's opinion. The prosecutor qualified Dr. Shoor as an expert in psychiatry and stressed Dr. Shoor's experience, truthfulness, and Stanford University training.

It is clear that the State recognized the importance of Dr. Shoor's testimony, not only from an examination of the prosecutor's own statements, but also from the fact that the State reordered its proof in the special circumstances retrial so as to make Dr. Shoor its second witness in its case-in-chief (instead of using him only as a rebuttal witness, as it did at the first trial). This trial strategy reflects the State's firmly held belief that Dr. Shoor's testimony was critical to proving that Ghent premeditated and deliberated with respect to the murder of Mrs. Bert. In light of all these circumstances, we view "with some skepticism," indeed with considerable skepticism, the State's argument that Dr. Shoor's testimony was tangential. *United States v. Brooke*, 4 F.3d 1480, 1488 (9th Cir.1993) (quoting *United States v. Hill*, 953 F.2d 452, 459 (9th Cir.1991)).

We would add, finally, that we find it highly significant that the prosecutor argued that one reason that Dr. Shoor's testimony was highly credible was that he had interviewed Ghent *before* Ghent was able to contact his lawyers. The State made use of—and sought to benefit from— this unconstitutional attribute of Dr. Shoor's behavior. By doing so, it only emphasized and exacerbated the violation. Moreover, the State's claim that Dr. Shoor's testimony merely "duplicated that of the defense," is patently erroneous, particularly as the prosecutor himself emphasized the uniqueness of that testimony.

In sum, it is clear that Dr. Shoor's testimony in the special circumstances retrial had "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637, 113 S.Ct. 1710. His testimony "stands out both because of his qualifications as a medical

6. For example, in the prosecutor's closing argument, he stated, "And [Dr. Shoor] felt that there was no evidence of diminished ca-

pacity ..." and that "Dr. Shoor said sound mind, sound enough certainly for the intent required here."

doctor specializing in psychiatry and because of the powerful content of his message." *Satterwhite v. Texas,* 486 U.S. 249, 259, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988). Accordingly, the special circumstances verdict cannot stand.[7] Without the special circumstances finding, Ghent is ineligible for the death penalty. *See* Cal.Penal Code § 190.2. Therefore, we vacate his death sentence and remand the matter so that the State may conduct a new special circumstances trial, if it so elects.[8] *See People v. Roy,* 207 Cal.App.3d 642, 255 Cal.Rptr. 214, 223 (1989); *see also Wade v. Calderon,* 29 F.3d 1312, 1322–23 (9th Cir.1994). Otherwise, it shall resentence Ghent on the charge of first degree murder, without any special circumstance finding.

### III. *Violation of Ghent's Due Process Rights*

 Ghent argues that his constitutional right to due process was violated because he was physically restrained by the State in the presence of the jury. Ghent is correct that a defendant has the right to be free of shackles and handcuffs in the presence of the jury, unless shackling is justified by an essential state interest. *See Rhoden v. Rowland,* 172 F.3d 633, 636(9th Cir.1999); *see also Holbrook v. Flynn,* 475 U.S. 560, 568–69, 106 S.Ct. 1340, 89 L.Ed.2d 525 (1986); *Illinois v. Allen,* 397 U.S. 337, 344, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). In order for a defendant to prevail on a claim of this nature, a court must find that the defendant was indeed physically restrained in the presence of the jury, that the shackling was seen by the jury, and that the physical restraint was not justified by state interests. Then, in order for the unjustified shackling to rise to the level of a constitutional error, the defendant must make a showing that he suffered prejudice as a result.[9] *United States v. Olano,* 62 F.3d 1180, 1190 (9th Cir.1995); *United States v. Halliburton,* 870 F.2d 557, 561–62 (9th Cir. 1989).

 In Ghent's case, the district court conducted an evidentiary hearing on this claim and found that there was insufficient evidence to support the contention that Ghent was restrained in open court during either of the two trials. The district court did find, however, that Ghent was transported to and from the courtroom in shackles and that on some of these occasions jurors observed him under restraint. Upon review of the record, we cannot conclude that any of the district court's factual findings were clearly erroneous. *See Olano,* 62 F.3d at 1190. There was conflicting testimony about whether jurors saw Ghent in handcuffs or restraints in the open courtroom while the court was in session, and neither the prosecutor nor the defense counsel remembered Ghent being handcuffed or shackled at the defense table during the trial. There was, however, testimony as to brief glimpses by jurors of Ghent in restraints as he walked in the hallway and stood at the doorway of the courtroom to have his restraints removed.

---

7. Because we conclude that the admission of Dr. Shoor's testimony is in itself an error requiring reversal, we need not consider the effect of the use of Officer DeSart's testimony.

8. We decline to address Ghent's claim of ineffective assistance of counsel, or any other claim with respect to the penalty phase. Because our special circumstances holding requires that Ghent's death sentence be vacated, it is not necessary to decide any other issue that would result in that same relief.

9. In a state habeas case, if a constitutional error is found, the federal court next must ask whether the error had a "substantial and injurious effect" on the jury's verdict. *Castillo v. Stainer,* 997 F.2d 669, 669 (9th Cir.1993) (amending 983 F.2d 145 (9th Cir.1992)); *see also Brecht,* 507 U.S. at 623, 113 S.Ct. 1710.

■ A preponderance of the evidence supports the finding that jurors did see Ghent in the hallway at the entrance to the courtroom in handcuffs and other restraints on some occasions.[10]

Jurors so testified and Ghent's defense counsel stated that he saw jurors from the first trial observe Ghent in the hallway being transported in restraints and specifically asked the court to correct this problem. The head of court security at the time testified that murder defendants were regularly transported in shackles to the courtroom and that the prisoner normally would be unshackled right before he entered the courtroom.

■ Despite our agreement with the district court's finding that jurors sometimes saw Ghent in handcuffs or restraints, we also agree with the district court that Ghent has not made a showing of actual prejudice. The district court found that "[o]bservations of Petitioner in the hallway or at the door of the courtroom [by jurors] are shown by the evidence to be brief and infrequent, and there is no evidence of prejudice." The evidence suggests that a few jurors at most glimpsed Ghent in shackles in the hallway and as he was entering the courtroom. The jury's "brief or inadvertent glimpse" of a shackled defendant is not inherently or presumptively prejudicial, nor has Ghent made a sufficient showing of actual prejudice. *See Rhoden,* 172 F.3d at 636; *Olano,* 62 F.3d at 1190; *Halliburton,* 870 F.2d at 561–62; *Wilson v. McCarthy,* 770 F.2d 1482, 1486 (9th Cir.1985).[11] Therefore, we affirm the district court's finding of no constitutional error.

## IV. *Lesser–Included Instruction Claim*

■ Ghent argues that the trial court failed in its *sua sponte* duty to instruct the jury on the lesser-included offense of assault with intent to commit rape. The California Supreme Court rejected this claim, as did the district court.

■ A jury verdict of guilt of a capital offense may not stand if the jury is not instructed to consider whether the defendant was guilty of a lesser-included non-capital offense, when the evidence would have supported such a verdict. *Beck v. Alabama,* 447 U.S. 625, 627, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980); *see also*

---

10. At the evidentiary hearing, Ghent made an *in limine* motion offering three declarations of deceased witnesses pursuant to Federal Rule of Evidence 807, the residual exception to the hearsay rule. Two declarations were by jurors during the first trial who declared under oath that they saw Ghent enter the courtroom in restraints. The third declaration was by a bailiff who worked during Ghent's trial who stated that it was normal procedure at the time for a defendant to enter the courtroom in handcuffs and other restraints.

The district court denied the motion and we do not find its denial to be an abuse of discretion. *See United States v. Olafson,* 203 F.3d 560, 565 (9th Cir.2000). The declarations of the jurors were not more probative than other evidence Ghent obtained and the information included in the bailiff's declaration is largely cumulative of other evidence that Ghent presented in the evidentiary hearing. *See* Fed.R.Evid. 807.

11. Ghent cites *Rhoden v. Rowland,* 172 F.3d 633 (9th Cir.1999), to support his claim that he suffered prejudice because the jury saw him in shackles as he entered the courtroom. In *Rhoden,* this court found that the defendant was prejudiced because the jury saw him shackled throughout the entire trial, despite the trial court's instruction for the jury to be out of the courtroom when he entered and for his legs to be under the counsel table. *Id.* at 636–37. *Rhoden* does not support Ghent's claim, however, because in that case the district court made the factual finding that Rhoden was shackled in the open courtroom during his entire trial. *Id.* at 634–36. In contrast, the district court here found that Ghent was *not* shackled in open court during any of the proceedings.

*Keeble v. United States,* 412 U.S. 205, 208, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973). If a *Beck* violation has occurred, the court must then determine whether the error had a substantial and injurious effect on the jury's deliberations and verdict. *See Brecht,* 507 U.S. at 638, 113 S.Ct. 1710.

▮▮▮▮ With respect to the finding of felony murder, the jury was given the choice of finding Ghent guilty of either the felony of rape or the lesser-included felony of attempted rape. It was not, however, given the option of returning a verdict on the related lesser-included offense of assault with intent to commit rape.[12] Both rape and attempted rape are listed in the California penal code as crimes that give rise to the finding of felony murder. *See* Cal.Penal Code § 189. Although assault with intent to commit rape is not specifically listed in the statute, it constitutes an *aggravated* form of attempted rape,[13] and would therefore necessarily also support a finding of felony murder. *See People v. Ghent,* 43 Cal.3d 739, 239 Cal.Rptr. 82, 739 P.2d 1250, 1261 (1987).

For purposes of the felony murder doctrine, all three offenses have the same potential consequence—each can serve as a predicate for a felony-murder conviction. Because Ghent was convicted of the *lesser* lesser-included offense of attempted rape,

he could not have benefitted had the jury been instructed to consider as well the *greater* lesser-included offense of assault with intent to commit rape. Therefore, even if we were to assume that the instruction on assault with intent to commit rape should have been given, it is evident that the trial court's failure to do so did not have any prejudicial or injurious effect on Ghent. *See Brecht,* 507 U.S. at 637, 113 S.Ct. 1710.

## V. *Conclusion*

We affirm Ghent's convictions but hold that the admission of Dr. Shoor's testimony in the special circumstances retrial in violation of Ghent's *Miranda* rights constituted prejudicial error. We do not reach the claims that relate solely to the penalty phase.

In sum, we AFFIRM the district court's denial of Ghent's petition with respect to the claims regarding his first trial. We REVERSE the determination of the district court with respect to the special circumstances retrial and the imposition of the death penalty. We remand to the district court with instructions to grant the writ of habeas corpus with respect to the finding of special circumstances and the death penalty sentence.

---

12. Assault with intent to commit rape (Cal.Penal Code § 220) is a lesser-included offense of rape. *People v. Babcock,* 160 Cal. 537, 117 P. 549, 550 (1911); *People v. Ramirez,* 2 Cal. App.3d 345, 82 Cal.Rptr. 665, 670 (1969). Rape requires forcible penetration of a woman against her will. *People v. Mullen,* 45 Cal.App.2d 297, 114 P.2d 11, 12 (1941). Assault with intent to commit rape occurs when the offender's intent to rape and to overcome the victim's resistance is coupled with the means of accomplishing that intent. *People v. Norrington,* 55 Cal.App. 103, 202 P. 932, 935 (1921). The offense of assault with intent to commit rape includes every fact necessary for a finding of rape except for the act of penetration. *Id.*

The jury was instructed on assault with intent to commit rape with respect to Ghent's housemate, Jacqueline Preskitt— and in fact found Ghent guilty of that offense.

13. Attempted rape plus an assault results in an assault with intent to commit rape. *In re Jose M.,* 21 Cal.App.4th 1470, 27 Cal.Rptr.2d 55, 58 (1994); *Ramirez,* 82 Cal.Rptr. at 670–71. An "assault" with an intent to commit a crime necessarily encompasses an "attempt" to commit that crime, but an "attempt" does not necessarily include an "assault." *People v. Akin,* 25 Cal.App. 373, 143 P. 795, 796 (1914); *see also People v. Rupp,* 41 Cal.2d 371, 260 P.2d 1, 7 (1953).

Affirmed in part; reversed in part; and remanded for issuance of a writ in accordance with this opinion.