**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

AUG 26 2015

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| JAMAAL JOHNSON, | No. 14-15339 |
| Petitioner - Appellant, | D.C. No. 3:10-cv-00610-RCJ-VPC |
| v. | |
| ADAM PAUL LAXALT, | MEMORANDUM* |
| Respondent - Appellee. | |

Appeal from the United States District Court
for the District of Nevada
Robert Clive Jones, District Judge, Presiding

Argued and Submitted July 7, 2015
San Francisco, California

Before: GRABER and WATFORD, Circuit Judges, and FRIEDMAN,** District
Judge.

Petitioner Jamaal Johnson appeals the district court's denial of habeas relief

under 28 U.S.C. § 2254. Reviewing de novo, Clabourne v. Ryan, 745 F.3d 362,

370 (9th Cir. 2014), we affirm.

---

* This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

** The Honorable Paul L. Friedman, United States District Judge for the
District of Columbia, sitting by designation.

1.  The district court correctly denied habeas relief on Petitioner's claims alleging a violation of Brady v. Maryland, 373 U.S. 83 (1963). The Supreme Court of Nevada reasonably concluded that, even assuming that the prosecution wrongfully withheld impeachment evidence concerning witnesses DeMarco Parker and Monique Morris, there was no "reasonable probability" that disclosure of the information would, collectively or individually, have made a difference to the outcome of Petitioner's trial. Smith v. Cain, 132 S. Ct. 627, 630 (2012). Petitioner confessed to the crime; Parker testified on both direct and cross-examination about his criminal history and his desire to obtain leniency from both prosecutors by testifying against Petitioner; and Morris' testimony had little importance. The additional evidence had no likelihood of changing the trial outcome.

Petitioner contends that the prosecution continues to withhold five further items of alleged Brady material. We are troubled by the State's position that it does not have access to those materials. The prosecution bears an obligation under Brady to turn over all favorable materials within its actual or constructive possession. Strickler v. Greene, 527 U.S. 263, 275 n.12 (1999). Despite that unsettling fact, Petitioner must "first establish[] a basis for his claim that [the sought-after documents] contain[] material evidence." Pennsylvania v. Ritchie, 480 U.S. 39, 58 n.15 (1987). Petitioner has failed to meet that burden, for the same

reasons stated above:  Given his confession, the impeachment of Parker that occurred, and the insignificance of Morris' testimony, the documents that Petitioner now seeks do not raise the specter of a different outcome, had they been disclosed.

2.  The district court correctly denied habeas relief on Petitioner's claims alleging a violation of Miranda v. Arizona, 384 U.S. 436 (1966).  Petitioner confessed after waiving his Miranda rights in an audio-recorded interview conducted by Detective Hardy.  Petitioner contends that (a) his confession was coached and coerced; (b) his confession was the product of an impermissible two-step "question first and warn later" interrogation strategy, Missouri v. Seibert, 542 U.S. 600, 611 (2004); and (c) his waiver of rights was not knowing and voluntary because he understood his waiver to apply only to an unrelated stolen-car investigation for which he had been arrested.

In rejecting Petitioner's first two arguments, the Supreme Court of Nevada found that no interrogation took place before the recording began.  To the contrary, the record plainly demonstrates that a pre-interview took place, and the Supreme Court of Nevada's contrary conclusion rests on impermissible speculation, given that the trial court never addressed this claim.  We conclude that its determination of the facts was "unreasonable."  28 U.S.C. § 2254(d)(2).  Accordingly, we review

3

de novo Petitioner's first two Miranda-based claims.  Frantz v. Hazey, 533 F.3d 724, 735–37 (9th Cir. 2008) (en banc).

On de novo review, Petitioner's claims fail.  Petitioner has not pointed to sufficient evidence in the record that Detective Hardy made inappropriate promises to Petitioner or otherwise coached and coerced him into confessing.  Similarly, the record does not establish the facts needed for success on a claim under Seibert, because nothing in the record establishes that Petitioner made inculpatory statements during the pre-interview.  Because Petitioner failed to request an evidentiary hearing on these claims—before the state courts, the district court, or this court in his opening brief—we will not remand for an evidentiary hearing. See, e.g., Cullen v. Pinholster, 131 S. Ct. 1388, 1401 (2011) ("Although state prisoners may sometimes submit new evidence in federal court, AEDPA's statutory scheme is designed to strongly discourage them from doing so.").

Finally, the Supreme Court of Nevada reasonably concluded that Petitioner's waiver of Miranda rights was knowing and voluntary.  During the recorded interview, Petitioner asked Detective Hardy if the waiver pertained to "this case right here."  Detective Hardy's rambling answer that he did not know anything about the unrelated stolen-car investigation was ambiguous.  It reasonably could be read as limiting the Miranda waiver to the stolen-car investigation, and it

4

reasonably could be read as limiting the <u>Miranda</u> waiver to the homicide investigation. The Supreme Court of Nevada concluded that Petitioner understood that the waiver applied to the homicide investigation. We will not disturb the state court's choice among reasonable interpretations.

**AFFIRMED.**



Johnson v. Laxalt, No. 14-15339

FRIEDMAN, District Judge, concurring in part and dissenting in part:

I agree that Petitioner Johnson loses on two of his three Miranda claims —

that his confession was coached and coerced and that it was the product of a two-

step "question first and warn later" interrogation strategy. I respectfully disagree,

however, that it was reasonable for the Supreme Court of Nevada to find that

Johnson's waiver of his Miranda rights was knowing and intelligent. I therefore

would reverse the district court's denial of Johnson's habeas corpus petition, and

remand with instructions that the writ issue.

Johnson was arrested and taken into custody for possession of a stolen

vehicle and drug possession. He then was brought to the Homicide Office by the

arresting officers, who had received notice that Johnson was wanted for

questioning about a burglary and two murders. Johnson read the warnings he was

provided as printed on a "Rights of Persons Arrested" card, and he signed the card

to indicate his understanding of them. Within the first few minutes of the audio-

recorded interrogation, Homicide Detective Hardy asked Johnson to confirm that,

prior to the start of the interview, Johnson had read and signed the card, indicating

his understanding of his rights. Johnson responded "Yeah." But then Johnson

asked whether "that's pertaining to this case right here." Detective Hardy

answered "No"; "you being under arrest has to do with whatever those other

officers brought you here for . . . you're not under arrest for anything on the homicide . . . ."

The Supreme Court of Nevada concluded that "the recorded statement clearly demonstrates Johnson's knowledge that the police were investigating the two murders, . . . that the <u>Miranda</u> warnings applied to any statements [Johnson made] concerning them," and that Johnson fully understood this. It is true that Johnson knew the police were investigating the murders, but the record cannot support the conclusion that Johnson understood that the <u>Miranda</u> warnings applied to his interrogation about the homicides. The Supreme Court of Nevada's determination that Johnson comprehended the nature of his rights and the consequences of his abandonment of those rights — being charged with murder based on his own statements — ignores crucial evidence in the record and it therefore does not bar Johnson's claim for habeas relief. <u>See</u> 28 U.S.C. § 2254(d)(2); <u>Milke v. Ryan</u>, 711 F.3d 998, 1010 (9th Cir. 2013); <u>Taylor v. Maddox</u>, 366 F.3d 992, 1008 (9th Cir. 2004).

The full exchange between Detective Hardy and Johnson reads as follows:

Detective Hardy:  Okay, um, date and time of this interview is gonna be, um, 12/16/01 at 2300 hours. Location of the interview is the Homicide Office. Persons present during this interview are Jamaal Johnson, Det. Sherwood, and

2

myself, Det. Hardy. Um, Jamaal, you understand this statement's being tape recorded?

Jamaal Johnson: Yeah.

Detective Hardy: Okay, and you understand that, uh, we're gonna ask you questions in reference to a double homicide that occurred on Jackson Street, um, more specifically 205 Jackson, apartment number one and it occurred on September 26th, where two individuals were killed, um, you understand that that's what we're talking to you about?

Jamaal Johnson: Yeah.

Detective Hardy: Okay, and that you, uh, also understand that you are under arrest for some other charges tonight, um, something to do with a vehicle, whatever they stopped you for.

Jamaal Johnson: I don't know shit about that car though.

Detective Hardy: Okay, but, um, as far as what, what you're under arrest for, you're not under arrest anything [sic] to do with this case, do you understand that?

Jamaal Johnson: Okay.

Detective Hardy: Is that right?

3

Jamaal Johnson: Yeah.

Detective Hardy: Okay, I mean as far as the double homicide, we haven't placed you under arrest, we're not gonna place you under arrest tonight for anything involving this homicide case. We're here to get your side of the story as to what happened.

Jamaal Johnson: All right.

Detective Hardy: Do you understand that?

Jamaal Johnson: Yeah.

Detective Hardy: Okay, and, uh, with that, um, prior to us starting this interview, you had read a Rights of Persons Arrested card and you understand those rights, is that correct?

Jamaal Johnson: Yeah.

Detective Hardy: Is there anything that you don't understand about those?

Jamaal Johnson: No, not really.

Detective Hardy: You've been shown those rights before.

Jamaal Johnson: I mean . . . yeah.

Detective Hardy: On other cases, right?

Jamaal Johnson: Yeah.

4

**Detective Hardy:** Okay and you signed that card saying you understand those rights.

**Jamaal Johnson:** Yeah and that's, that's pertaining to this case right here?

**Detective Hardy:** No.

Jamaal Johnson:   Or . . .

**Detective Hardy:** The, the, you being under arrest has to do with whatever those other officers brought you here for.

**Jamaal Johnson:** Oh, okay.

**Detective Hardy:** Okay, whatever, whatever that whole incident was, I don't even know where it is [sic].

Jamaal Johnson:   Oh, okay.

Detective Hardy:   You understand that?

Jamaal Johnson:   Yeah.

**Detective Hardy:** Okay, but you're not under arrest for anything on the homicide, okay?

Jamaal Johnson:   All right.

Detective Hardy then launched into substantive questioning of Johnson about his participation in the burglary and homicides.

My reading of the complete transcript of this exchange makes clear to me that by asking Hardy about "this case right here," Johnson was referring to the homicide case rather than the stolen vehicle case. Just seconds earlier, Detective Hardy had explained to Johnson that "as far as what, what you're under arrest for, *you're not under arrest anything [sic] to do with **this case***, do you understand that?" Hardy then stated to Johnson that, "as far as the double homicide, we haven't placed you under arrest, we're not gonna place you under arrest tonight for anything involving ***this homicide case***." When Johnson then asked Detective Hardy to clarify whether the <u>Miranda</u> warnings he had read "pertain[ed]" to questioning about "this case," Hardy answered "No." And Hardy did not retract or correct his statement to Johnson. Detective Hardy's comments following his "No" response, if anything, reinforced the idea that the <u>Miranda</u> warnings, written on a "Rights of Persons Arrested" card, had no connection to the crimes for which Johnson had *not* been arrested and about which he was soon to be questioned — the homicides.

With respect, the words in the transcript simply cannot be reconciled with the Supreme Court of Nevada's determination that "the recorded statement clearly demonstrates Johnson's knowledge . . . that the <u>Miranda</u> warnings applied to any statements concerning [the homicides]," or its finding that any confusion was "cleared up" by Detective Hardy. And if Johnson did not understand that the rights

6

he had read — and the rights card he had signed — pertained to the homicide case, then he did not know his statement could be used against him in a criminal prosecution for murder. His decision to talk therefore was not made with "a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Moran v. Burbine, 475 U.S. 412, 421 (1986) (court may find Miranda rights validly waived only if circumstances reveal "both an uncoerced choice and the requisite level of comprehension"); see Berghuis v. Thompkins, 560 U.S. 370, 384 (2010) (state must not only show that warning was given and statement was uncoerced; it must also "make the additional showing that the accused understood these rights").

"The courts must presume that a defendant did not waive his rights," North Carolina v. Butler, 441 U.S. 369, 373 (1979), and the prosecution shoulders the heavy burden of proving that a defendant's waiver was knowing and intelligent, Thompkins, 560 U.S. at 383-84; Miranda v. Arizona, 384 U.S. 436, 475 (1966). Johnson's question to Hardy demonstrates that Johnson did not understand the pertinence of the Miranda warnings to the homicide interrogation, and Hardy's response did not resolve Johnson's lack of comprehension. In my view, the State failed to carry its burden to prove that Johnson's confession was the result of a knowing and intelligent waiver of his privilege against self-incrimination and his

7

right to counsel. The Supreme Court of Nevada's decision to the contrary was not just incorrect; it was unreasonable.

The admission of Johnson's recorded confession at trial therefore was error, so "the question is whether the erroneously admitted evidence had a 'substantial and injurious effect or influence in determining the jury's verdict.'" Ghent v. Woodford, 279 F.3d 1121, 1127 (9th Cir. 2002) (quoting Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)). In this case, how could it not? There was no physical evidence linking Johnson to the burglary and the homicides. Apart from Johnson's confession, the most probative inculpatory evidence was the testimony of DeMarco Parker, who participated in the crimes and who stated that Johnson was a co-participant, and who had, at the time of his testimony, already pleaded guilty in federal court and was awaiting sentencing. While Parker's testimony was significant, Johnson's recorded confession unquestionably "had a substantial and injurious effect or influence in determining the jury's verdict." Ghent, 279 F.3d at 1127. In my view, then, a writ of habeas corpus should issue, and at any new trial the State would not be able to rely on Johnson's recorded statement in its case in chief.

With that said, given the majority's disposition of Johnson's Miranda claims, I agree that Johnson's claims under Brady v. Maryland do not provide any grounds for relief. But like my colleagues, I am troubled by the State's insistence

8

that it cannot access materials from the federal court case — a case that stemmed from a joint task force investigation and in which a State prosecutor was deputized as a Special Assistant United States Attorney.